**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

**UNITED STATES OF AMERICA,**

-   **v.  -**

**ARA APRAHAMIAN,**

      **Defendant.**

**CRIMINAL NO. 20-cr-00064**

**HON. R. BARCLAY SURRICK**

### DEFENDANT ARA APRAHAMIAN'S MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS COUNT THREE

G. Robert Gage, Jr.
Gage Spencer & Fleming LLP
410 Park Avenue, Suite 900
New York, NY 10022
(212) 768-4900
grgage@gagespencer.com

Caroline Goldner Cinquanto
The Law Firm of Caroline Goldner Cinquanto
123 S. Broad Street, Suite 2500
Philadelphia, PA 19109
(215) 735-1600
carrie@cglegal.com

Alexandra A.E. Shapiro
Fabien M. Thayamballi
Shapiro Arato Bach LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110
(212) 257-4880
ashapiro@shapiroarato.com
fthayamballi@shapiroarato.com

*Attorneys for Defendant Ara Aprahamian*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT AND BACKGROUND............................................................ 1

ARGUMENT ................................................................................................................... 3

I.  THE CASE SHOULD BE TRANSFERRED TO THE SOUTHERN
DISTRICT OF NEW YORK ...................................................................................... 3

   A.  The Court Should Transfer The Case If, All Things Considered, The
Case Would Be Better Off In Another District ................................................ 3

   B.  This Case Would Be Better Off In The Southern District Of New York ..................... 4

      1.  Mr. Aprahamian's Location And That Of His Family Weighs
Strongly In Favor Of Transfer ................................................................. 4

      2.  Witnesses For Both Parties Are Generally Located Closer To
The Southern District Of New York ........................................................ 6

      3.  Many Of The Key Events At Issue Took Place In The Southern
District of New York ............................................................................. 8

      4.  The Location Of Key Documents And Records Does Not Weigh
Either For Or Against Transfer ............................................................... 10

      5.  A Trial In The Southern District Of New York Would Be Less
Disruptive To Mr. Aprahamian's Business............................................. 10

      6.  The Location of Counsel Weighs In Favor Of Transfer........................................ 11

      7.  The Expense To The Parties Weighs In Favor Of Transfer ................................. 11

      8.  The Southern District Of New York Is Relatively More Accessible ..................... 12

      9.  The Docket Conditions In The Southern District Of New York Are
Slightly More Favorable ........................................................................ 13

      10. Other Special Considerations Favor Granting the Motion to Transfer................. 13

II.  ALTERNATIVELY, COUNT THREE SHOULD BE DISMISSED
FOR LACK OF VENUE .......................................................................................... 15

   A.  The Indictment Must Adequately Allege Venue For Every Offense......................... 15

B.   The Allegations In The Indictment Demonstrate That This District
     Is Not A Proper Venue For Count Three ................................................................ 17

C.   The Non-Binding Decisions That Construe § 1001 Venue More
     Broadly Are Demonstrably Incorrect ........................................................... 23

CONCLUSION ........................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)................................................................ 18

*Doe v. Attorney Gen. of U.S.*,
  659 F.3d 266 (3d Cir. 2011) .................................................... 18

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)............................................................. 24

*In re U.S.*,
  273 F.3d 380 (3d Cir. 2001) ................................................. 2, 3

*Martin v. Hunter's Lessee*,
  14 U.S. 304 (1816)................................................................... 18

*Platt v. Minn. Mining & Mfg. Co.*,
  376 U.S. 240 (1964)................................................................... 3

*Reid v. Covert*,
  354 U.S. 1 (1957)..................................................................... 18

*Santos-Reyes v. Attorney Gen. of U.S.*,
  660 F.3d 196 (3d Cir. 2011) .................................................... 18

*Travis v. United States*,
  364 U.S. 631 (1961)................................................................. 16

*United States v. Atwood*,
  538 F. Supp. 1206 (E.D. Pa. 1982) ...................................... 6, 8

*United States v. Auernheimer*,
  748 F.3d 525 (3d Cir. 2014) ............................................ *passim*

*United States v. Ayo*,
  801 F. Supp. 2d 1323 (S.D. Ala. 2011) ............................ 13, 14

*United States v. Barrientos*,
  485 F. Supp. 789 (E.D. Pa. 1980) ............................................ 6

*United States v. Beech-Nut Nutrition Corp.*,
  871 F.2d 1181 (2d Cir. 1989) ................................................. 18

*United States v. Benjamin*,
    623 F. Supp. 1204 (D.D.C. 1985) ................................................................. 10, 11, 13

*United States v. Bin Laden*,
    146 F. Supp. 2d 373 (S.D.N.Y. 2001) ............................................................... 20, 22

*United States v. Brennan*,
    No. CR 19-507, 2020 WL 1684149 (E.D. Pa. Apr. 7, 2020) ................................ 23, 24, 25, 26

*United States v. Cabrales*,
    524 U.S. 1 (1998) ............................................................................................. *passim*

*United States v. Campestrini*,
    993 F. Supp. 2d 69 (D.P.R. 2014) ..................................................................... 10, 11

*United States v. Coffee*,
    113 F. Supp. 2d 751, 754 (E.D. Pa. 2000) ......................................................... *passim*

*United States v. Coplan*,
    703 F.3d 46 (2d Cir. 2012) ................................................................................. 23

*United States v. Ferguson*,
    432 F. Supp. 2d 559 (E.D. Va. 2006) .................................................................. 6, 12, 13

*United States v. Haley*,
    504 F. Supp. 1124 (E.D. Pa. 1981) ..................................................................... *passim*

*United States v. John*,
    477 F. App'x 570 (11th Cir. 2012) ...................................................................... 20, 22

*United States v. Johnson*,
    323 U.S. 273 (1944) ........................................................................................... 15, 16

*United States v. Kennedy*,
    No. CR. 86-159, 1986 WL 6227 (E.D. Pa. May 28, 1986) ................................. *passim*

*United States v. Lima*,
    No. 94 CR 800, 1995 WL 348105 (N.D. Ill. June 1, 1995) ................................. 11

*United States v. Lombardo*,
    241 U.S. 73 (1916) ............................................................................................. 16

*United States v. Martino*,
    No. S1 00 CR 389 (RCC), 2000 WL 1843233 (S.D.N.Y. Dec. 14, 2000) ........... 8, 10, 12

*United States v. Menendez*,
    137 F. Supp. 3d 688 (D.N.J. 2015) ..................................................................... 16

*United States v. Menendez*,
  831 F.3d 155 (3d Cir. 2016) ............................................................................... 16

*United States v. Muratoski*,
  413 F. Supp. 2d 8 (D.N.H. 2005) ........................................................................... 6

*United States v. Neff*,
  212 F.2d 297 (3d Cir. 1954) ................................................................................. 19

*United States v. Negron*,
  No. CRIM A 08-501(WHW), 2008 WL 5272056 (D.N.J. Dec. 16, 2008) ............... 6

*United States v. Oceanpro Indus., Ltd.*,
  674 F.3d 323 (4th Cir. 2012) ................................................................................ 23

*United States v. Passodelis*,
  615 F.2d 975 (3d Cir. 1980) ........................................................................... 16, 19

*United States v. Perez*,
  280 F.3d 318, 327 (3d Cir. 2002) ......................................................................... 16

*United States v. Ringer*,
  300 F.3d 788 (7th Cir. 2002) ................................................................................ 23

*United States v. Rodriguez-Moreno*,
  526 U.S. 275 (1999) ...................................................................... 21, 22, 25, 26

*United States v. Roeder*,
  No. 20-1682, 2020 WL 1545872 (3d Cir. Apr. 1, 2020) ........................................ 6

*United States v. Russell*,
  582 F. Supp. 660 (S.D.N.Y. 1984) ........................................................... 3, 5, 6, 12

*United States v. Salinas*,
  373 F.3d 161 (1st Cir. 2004) ........................................................................... 23, 24

*United States v. Smith*,
  641 F.3d 1200 (10th Cir. 2011) ....................................................................... 20, 22

*United States v. Sprague*,
  282 U.S. 716 (1931) ............................................................................................. 18

*United States v. Valenti*,
  207 F.2d 242 (3d Cir. 1953) ....................................................................... 16, 18, 19

*United States v. Woodard*,
  No. CR 13-25-5, 2017 WL 11463711 (E.D. Pa. Dec. 15, 2017) ............................ 16

*United States v. Yermian,*
   468 U.S. 63 (1984)..................................................................................... 22, 24


## Constitutional Provisions, Statutes, and Rules

U.S. Const. art. III, § 2, cl. 3 ......................................................... 15, 17, 18

U.S Const. amend. VI ........................................................................ 15, 17

18 U.S.C. § 924 ................................................................................. 21, 26

18 U.S.C. § 1001 ............................................................................... *passim*

18 U.S.C. § 1951 ...................................................................................... 27

18 U.S.C. § 1956 ...................................................................................... 25

18 U.S.C. § 1957 ...................................................................................... 25

Fed. R. Crim P. 12 .................................................................................. 1, 16

Fed. R. Crim P. 18 ................................................................................. 15, 18

Fed. R. Crim P. 21 ............................................................................... 1, 2, 3


## Other Authorities

Black's Law Dictionary (9th ed. 2009).................................................... 18

Oxford English Dictionary, Online Edition ............................................. 18

Pursuant to Federal Rule of Criminal Procedure Rule 21(b), Defendant Ara Aprahamian respectfully moves the Court to transfer the proceeding to the Southern District of New York, where venue is proper for all counts of the Indictment, as well as for the convenience of the parties, witnesses, and in the interest of justice.  In the alternative, if the Court does not transfer the proceeding, it should dismiss Count Three for lack of venue pursuant to Rule 12(b)(3)(A)(i).

## PRELIMINARY STATEMENT AND BACKGROUND

Mr. Aprahamian is a resident of Rockland County in the Southern District of New York, where he has lived for decades.  He is a former executive at Taro Pharmaceuticals U.S.A., Inc., a pharmaceutical company headquartered in the hamlet of Hawthorne within the Southern District of New York.  In Counts One and Two of the Indictment, the government alleges that Mr. Aprahamian engaged in conspiracies to fix prices and allocate customers for generic drugs in violation of the antitrust laws, all while working from Taro's offices in the Southern District of New York.  In Count Three, the government alleges that Mr. Aprahamian made a false statement to an FBI agent during a search of Taro's offices by the FBI in the Southern District of New York.  Thus, the government could easily have brought this prosecution in the Southern District of New York.  Indeed, for Count Three, the Southern District of New York is the *only* venue permitted by the Constitution and the Federal Rules, as that is the only place where Mr. Aprahamian allegedly committed the charged crime.

The government's choice to bring this prosecution in the Eastern District of Pennsylvania is puzzling.  The connections between this proceeding and this District are far less substantial: (1) one of the companies with which Mr. Aprahamian allegedly conspired was based in this District at the time of the alleged conspiracy (although it has since moved its headquarters much closer to New York); (2) some of the customers allegedly impacted by the conspiracy were located in this District; and (3) the government has conducted part of its investigation in this

District.  While these allegations might establish venue for Counts One and Two (but not Count Three), they fail to establish that this District is the most appropriate place for trial.  Rather, the Southern District of New York has, by far, the strongest connections to the charges in the Indictment.  The Southern District of New York is, by far, the least burdensome venue for Mr. Aprahamian and his family, whose professional and caretaking obligations make it exceedingly onerous to attend a five-week trial in Philadelphia.  And the Southern District of New York is, overall, more convenient for the potential witnesses and trial counsel.  A New York trial would also be less expensive than a trial in this District, which would require transporting and lodging Mr. Aprahamian's counsel and witnesses in Philadelphia for a minimum of five weeks.

The Third Circuit has held that, to warrant a transfer under Federal Rule of Criminal Procedure 21(b), Mr. Aprahamian "is not required to show truly compelling circumstances for change of venue, but rather that all relevant things considered, the case would be better off transferred to another district." *In re U.S.*, 273 F.3d 380, 388 (3d Cir. 2001) (alterations omitted).  Here, that standard is not only met, but exceeded.  Indeed, the circumstances are compelling.  The relevant factors weigh overwhelmingly in favor of transfer, and, perhaps most significantly, the government is constitutionally barred from prosecuting one of the charges in this District.  The Court should therefore transfer this case to the Southern District of New York, where venue is proper and where a great deal of unnecessary expense and hardship for Mr. Aprahamian's family can be avoided.  However, in the alternative, if the Court chooses to keep this case in the Eastern District of Pennsylvania, it must dismiss Count Three for lack of venue.[1]

---

[1] Mr. Aprahamian reserves the right to make additional pretrial motions, as the Court has adjourned without date the deadlines to make all pretrial motions other than the present motion for change of venue.  (Dkts. 17, 28).

## ARGUMENT

I.  **THE CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK**

The Court should transfer this case in its entirety to the Southern District of New York. In addition, Mr. Aprahamian respectfully requests that the Court specify that the case should be transferred to the White Plains courthouse within that District.[2]

### A.  The Court Should Transfer The Case If, All Things Considered, The Case Would Be Better Off In Another District

"Upon the defendant's motion, the court may transfer the proceeding . . . to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."  Fed. R. Crim. P. 21(b).  "Whether to transfer a case is generally committed to the discretion of the district courts."  *In re U.S.*, 273 F.3d 380, 387 (3d Cir. 2001).  The Court should consider factors including the

> (1) location of [the] . . . defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of [the] place of trial; (9) docket condition of each district . . . involved; and (10) any other special elements which might affect the transfer.

*Id.* at 387-88 (quoting *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964)).  "A balance should be struck among the most important factors in the particular case to determine whether transfer is appropriate."  *Id.* at 388.  "While the burden is on the defendant, the defendant is not required to show truly compelling circumstances for change of venue, but rather that all relevant things considered, the case would be better off transferred to another

---

[2] *See, e.g.*, *United States v. Coffee*, 113 F. Supp. 2d 751, 754, 759 (E.D. Pa. 2000) (transferring case to the Western Division of the Southern District of Ohio); *United States v. Russell*, 582 F. Supp. 660, 665 (S.D.N.Y. 1984) (transferring case to the Memphis Division of the Western District of Tennessee).

district." *Id.* (quotation marks and alterations omitted); *accord United States v. Coffee*, 113 F. Supp. 2d 751, 753 (E.D. Pa. 2000).  And although the government undoubtedly considered where it preferred to prosecute this case, "the bureaucratic convenience of the Government is subject to Rule 21(b), and . . . it must give way to the principles of fairness embedded in that Rule." *Coffee*, 113 F. Supp. 2d at 759.

**B.  This Case Would Be Better Off In The Southern District Of New York**

    **1.  Mr. Aprahamian's Location And That Of His Family Weighs Strongly In Favor Of Transfer**

Mr. Aprahamian's location and family circumstances strongly favor granting his motion for transfer to the Southern District of New York (most appropriately, the White Plains courthouse).

As he has for decades, Mr. Aprahamian currently resides in the Rockland County area of the Southern District of New York, approximately 25 minutes from the White Plains courthouse and 45 minutes from the Manhattan courthouses.  It takes significantly longer for Mr. Aprahamian to travel to the Philadelphia courthouse in this District: approximately 2 hours each way.  The difference in travel time will become especially significant at trial, given the government's estimate that its case-in-chief will last a minimum of five weeks.  If Mr. Aprahamian were tried in Philadelphia, "he would be forced to choose between the burden of daily commuting or obtaining accommodations in Philadelphia throughout the duration of the trial." *United States v. Kennedy*, No. CR. 86-159, 1986 WL 6227, at *1 (E.D. Pa. May 28, 1986).  This plainly weighs in favor of transferring the trial to a more convenient location.

Mr. Aprahamian's wife and two daughters, a high-school student and college student, also reside with him in the Southern District of New York.  If Mr. Aprahamian were tried in Philadelphia, his family would have to choose whether to "attend the trial and offer emotional

support to the defendant" despite the burden and dislocation that would entail.  *Id.*  Notably, Mr.

Aprahamian's wife is a hospital nurse currently on the front line of confronting the COVID-19

pandemic.  It appears that the pandemic will persist, and likely re-occur in waves, over the next

18 months or more.[3]  Accordingly, Mr. Aprahamian's wife will likely have substantial work

commitments through the time of trial, rendering it exceptionally difficult for her to travel to

Philadelphia—let alone to stay there and deprive her employer of an essential healthcare worker.

Her schedule is sufficiently flexible, however, that she could potentially attend trial and then

work her shift on certain days if the trial took place in the Southern District of New York,

particularly in White Plains.

In addition, Mr. Aprahamian's younger daughter is a high school student who lives at

home.  Mr. Aprahamian is ordinarily able to look after her when she returns from afterschool

activities; his wife is often unable to do so because of her shifts at the hospital.  If the trial were

held in Philadelphia, the daughter would be alone at home for much of the time.  *Cf. United*

*States v. Russell,* 582 F. Supp. 660, 662 (S.D.N.Y. 1984) (granting transfer in part because the

defendant, his wife, "as well as their three college-aged children, live together").

Mr. Aprahamian is also responsible for taking care of his elderly mother, a widowed

septuagenarian who lives a short drive from the family home, and whom Mr. Aprahamian visits

on a weekly basis.  Mr. Aprahamian's mother is, unfortunately, no longer in good health, as she

struggles with diabetes, fibromyalgia, and cardiovascular issues and is legally disabled.  As a

result, for several years, Mr. Aprahamian has assisted in performing essential tasks for her that

---

[3] *See* https://www.cnbc.com/2020/05/01/coronavirus-pandemic-likely-to-last-for-two-years-scientists-predict.html; https://www.cnn.com/2020/04/30/health/report-covid-two-more-years/index.html; https://www.nytimes.com/2020/03/17/us/politics/trump-coronavirus-plan.html; https://medicine.yale.edu/news-article/23446/.

she can no longer perform herself, such as grocery shopping and home maintenance. Considering the risks of COVID-19 to the elderly, Mr. Aprahamian's ability to take care of his mother has taken on a markedly increased importance. *See United States v. Roeder*, No. 20-1682, 2020 WL 1545872, at *1 (3d Cir. Apr. 1, 2020) ("The elderly and those with pre-existing medical conditions are at increased risk of severe illness and death from the [corona]virus.").[4]

For reasons of this sort, courts in this District and elsewhere have repeatedly emphasized that "it is preferable to try a defendant in the district where he resides." *Kennedy*, 1986 WL 6227, at *1; *accord, e.g.*, *United States v. Atwood*, 538 F. Supp. 1206, 1207 (E.D. Pa. 1982); *United States v. Haley*, 504 F. Supp. 1124, 1126 (E.D. Pa. 1981); *United States v. Barrientos*, 485 F. Supp. 789, 791 (E.D. Pa. 1980); *United States v. Negron*, No. CRIM A 08-501(WHW), 2008 WL 5272056, at *3 (D.N.J. Dec. 16, 2008); *United States v. Ferguson*, 432 F. Supp. 2d 559, 562 (E.D. Va. 2006); *United States v. Muratoski*, 413 F. Supp. 2d 8, 11 (D.N.H. 2005); *Russell,* 582 F. Supp. at 662. Mr. Aprahamian's location and the unique impact on his family weigh heavily in favor of granting the motion to transfer to the Southern District of New York.

### 2. Witnesses For Both Parties Are Generally Located Closer To The Southern District Of New York

The location of possible witnesses likewise favors granting Mr. Aprahamian's motion to transfer. The Indictment alleges conspiracies to restrain trade between Taro and Sandoz (Count 1) and between Taro and Teva Pharmaceuticals USA (Count 2). Taro is located in Hawthorne,

---

[4] During the COVID-19 pandemic, Mr. Aprahamian has taken on additional responsibilities in his community, helping elderly neighbors with their essential needs including grocery shopping and other tasks they can no longer perform.

New York, in the Southern District of New York.[5]  Sandoz is located in Princeton, New Jersey.[6]
While Teva was based in Pennsylvania during the period covered by the indictment, it has since
relocated its North America headquarters to Parsippany, New Jersey.[7]  Approximate travel times
by car are as follows:

|  | Philadelphia courthouse | Manhattan courthouses | White Plains courthouse |
|---|---|---|---|
| Taro | 2 hours | 45 minutes | 15 minutes |
| Sandoz | 50 minutes | 1 hour 15 minutes | 1 hour 35 minutes |
| Teva | 1 hour 40 minutes | 50 minutes | 55 minutes |
| Sum of travel time | 4 hours 30 minutes | 2 hours 50 minutes | 2 hours 45 minutes |

Overall, the White Plains courthouse and Manhattan courthouses are closer to these companies
than is the Philadelphia courthouse.

In addition, in the related multidistrict civil litigation over alleged price-fixing in the
generic pharmaceutical industry, the government has provided a list of potential witnesses in its
criminal investigation who should not be deposed, including many potential witnesses at Mr.
Aprahamian's trial.  Based on the information available to us, it is our understanding that
approximately 33 potential witnesses reside in the greater New York City area, 24 potential
witnesses reside in or closer to Philadelphia, and 27 potential witnesses reside in locations far

---

[5] https://www.taro.com/contact

[6] https://www.us.sandoz.com/about-us/contact-us

[7] https://businessfacilities.com/2018/07/teva-pharmaceuticals-moving-u-s-headquarters-parsippany-troy-hills-new-jersey/; https://www.tevapharm.com/news-and-media/latest-news/teva-and-new-jersey-governor-murphy-formalize-north-america-headquarters-move-with-ceremony-in-israel-/

from all of the courthouses under consideration.[8]  Thus, it appears that the Southern District of New York is more convenient for most of the government's witnesses.

Moreover, the witnesses that Mr. Aprahamian is likely to call in his defense are primarily located in or near the Southern District of New York.  Executives from Taro, for example, would be able to testify that Mr. Aprahamian did not engage in the price fixing and market allocation schemes alleged in the Indictment.  Testifying in the Southern District of New York would be significantly less burdensome for these witnesses, given the potential for long travel times to disrupt their professional and family responsibilities.  *See Kennedy*, 1986 WL 6227, at *1 (acknowledging that "it is likely that any defense witnesses would be located" where the defendant lived and worked, even if they were not yet identified); *Atwood*, 538 F. Supp. at 1207 ("The location of possible witnesses is an important consideration because it directly affects defendant's ability to defend himself at trial.").

In sum, the location of possible witnesses for both parties supports Mr. Aprahamian's motion to transfer.

### 3. Many Of The Key Events At Issue Took Place In The Southern District of New York

The location of the events likely to be at issue at trial favors granting Mr. Aprahamian's motion for transfer as well.  All else being equal, the trial should be "held near where the allegedly criminal activity occurred, rather than in a district where venue has a more remote connection to the crime."  *Coffee*, 113 F. Supp. 2d at 755-56; *accord, e.g.*, *United States v. Martino*, No. S1 00 CR 389 (RCC), 2000 WL 1843233, at *7 (S.D.N.Y. Dec. 14, 2000).

---

[8] The Southern District of New York is likely more convenient for these 27 witnesses given the greater availability of direct flights and train routes.

The Southern District of New York is, without question, the "nerve center" of the allegations against Mr. Aprahamian.  *E.g.*, *Kennedy*, 1986 WL 6227, at *2; *Haley*, 504 F. Supp. at 1128.  In Counts One and Two, Mr. Aprahamian is alleged to have shared pricing and market information about generic drugs with Sandoz and Teva while residing and working in the Southern District of New York.  He is also alleged to have used information from these companies to manipulate Taro's prices and bids for customers, all while working from Taro's offices in the Southern District of New York.  Most of the officials involved in Taro's pricing decisions and analyses were located in the Southern District of New York.  The only alleged connections to the Eastern District of Pennsylvania are that Teva and some of the affected customers were located there during the relevant period.  (Indictment ¶¶ 20(g), 29, 33, 41).  The core conduct with which Mr. Aprahamian is charged did not occur in this District.

In Count Three, Mr. Aprahamian is alleged to have made a false statement to an FBI agent during a search of Taro's offices in New York.  (Indictment ¶¶ 11, 46).  The FBI searched Taro's offices pursuant to a warrant authorized by the United States District Court for the Southern District of New York in White Plains.  The only alleged connection to the Eastern District of Pennsylvania is that the federal investigation was being conducted in this District in addition to New York.  (*Id.* ¶ 46).  As explained below, these allegations establish that venue does *not* lie in this District for Count Three.  Instead, venue is proper only in the Southern District of New York.

The Southern District of New York has, by far, the strongest connections to the charges in the Indictment, heavily favoring a transfer to that District.

### 4. The Location Of Key Documents And Records Does Not Weigh Either For Or Against Transfer

The "location of documents" factor is of limited relevance in the age of electronic document storage and discovery. *See United States v. Campestrini*, 993 F. Supp. 2d 69, 72-73 (D.P.R. 2014); *Martino*, 2000 WL 1843233, at *5. The government has digitized its voluminous records and will provide them to the defense. It is no great burden to transfer these documents to any of the courthouses under consideration for trial. Thus, this factor is neutral. *See Coffee*, 113 F. Supp. 2d at 756.

### 5. A Trial In The Southern District Of New York Would Be Less Disruptive To Mr. Aprahamian's Business

Mr. Aprahamian left Taro before this proceeding was brought against him. He is making efforts to work from his home as a pharmaceutical consultant, but it is not an easy task. A trial in Pennsylvania could only be more disruptive to Mr. Aprahamian's professional endeavors than a trial in Mr. Aprahamian's district of residence. *See United States v. Benjamin*, 623 F. Supp. 1204, 1214 (D.D.C. 1985) (granting transfer in part because "[t]here remains . . . a margin of time and expense which plainly balances the 'convenience-to-defendants'-business factor' in favor of the [home forum]"); *Kennedy*, 1986 WL 6227, at *2 (granting transfer in part because the defendant "will more likely be able to work when he is not in the courtroom"); *cf. Haley*, 504 F. Supp. at 1128 ("Courts recognize that 'personal involvement, even a few hours each weekday plus weekends could make a substantial difference' to the success of a struggling business."). This factor also weighs in favor of transfer to the Southern District of New York.

### 6.   The Location of Counsel Weighs In Favor Of Transfer

While Mr. Aprahamian has retained local counsel in this District,[9] his primary trial

counsel are located in the Southern District of New York.[10]   Several of Mr. Aprahamian's New

York attorneys "have represented [Mr. Aprahamian] from the beginning of a [multi-]year

investigation leading up to the instant charge[s]."   *United States v. Lima*, No. 94 CR 800, 1995

WL 348105, at *3 (N.D. Ill. June 1, 1995); *see also Benjamin*, 623 F. Supp. at 1212 (granting

transfer in part because counsel in the transferee forum "have a long time attorney-client

relationship and [are] familiar in some depth with the affairs of [the defendant] and the facts of

this case"); *Kennedy*, 1986 WL 6227, at *2 (same).   Furthermore, as the Antitrust Division of the

Department of Justice is prosecuting this case, "the government's efforts are being directed from

Washington, D.C.," not Philadelphia.   *Lima*, 1995 WL 348105, at *3.   "[T]he government is

represented by . . . attorneys from the Department of Justice whose duty and practice is to try

cases in any federal court in the United States" and who, "[i]n any federal district, . . . have a

built-in office, complete with local logistical support."   *Benjamin*, 623 F. Supp. at 1212.   Thus,

the location of counsel favors transferring the case as well.

### 7.   The Expense To The Parties Weighs In Favor Of Transfer

Litigation expenses will increase dramatically if Mr. Aprahamian is forced to stand trial

in Philadelphia.   These costs will include, for a minimum of five weeks, transportation and

lodging costs for Mr. Aprahamian, his family, his counsel, and any expert witnesses—costs that

could largely be avoided if the trial took place in the Southern District of New York.   *See, e.g.*,

*Campestrini*, 993 F. Supp. 2d at 72 (granting transfer in part because while the defendant would

---

[9] The Law Firm of Caroline Goldner Cinquanto.

[10] Gage Spencer & Fleming LLP and Shapiro Arato Bach LLP.

11

"likely incur significant traveling and lodging expenses for himself and for counsel in order to attend trial" in the original district, "[w]ere trial to be held in [his home district], he [would] only commute 30 minutes to the courthouse and [would] not require housing"); *Kennedy*, 1986 WL 6227, at *1-2 (granting transfer in part because trial in Philadelphia would require "either burdensome travel or the expense of accommodations" for the defendant, counsel, witnesses, and family members); *Russell*, 582 F. Supp. at 662-63 (same).

By contrast, a trial in New York would not seriously burden the government, as the government's attorneys will be required to travel and obtain lodging for trial regardless of whether the case is transferred. Moreover, "in the criminal context," the expense to the government is given minimal weight because "[t]he United States of America has, for all practical purposes, unlimited financial resources to bring to bear." *Coffee*, 113 F. Supp. 2d at 757; *accord Martino*, 2000 WL 1843233, at *7 (same); *Ferguson*, 432 F. Supp. 2d at 567 (even where "Defendants are people of significant financial means, . . . when compared to that of the government's resources, they pale in comparison").

### 8. The Southern District Of New York Is Relatively More Accessible

Both this District and the Southern District of New York are "accessible" in the traditional geographical sense. *See Coffee*, 113 F. Supp. 2d at 758; *Haley*, 504 F. Supp. at 1129. However, as explained above, a New York trial would reduce the burden of travel for all involved. In addition, the COVID-19 pandemic has increased the risks associated with travel, and it may well continue to pose a threat through the time of trial. Accordingly, it is especially important under these circumstances to avoid unnecessary travel and permit Mr. Aprahamian to stand trial in his home district.

### 9.   The Docket Conditions In The Southern District Of New York Are Slightly More Favorable

Both this Court and the Southern District of New York are well-equipped to efficiently handle Mr. Aprahamian's case, and courts have questioned the need to analyze docket conditions in light of the Speedy Trial Act. *See Ferguson*, 432 F. Supp. 2d at 569; *Haley*, 504 F. Supp. at 1129; *Benjamin*, 623 F. Supp. at 1215.  To the extent docket conditions are relevant, they slightly favor the Southern District of New York for criminal cases.  The median disposition time for felony cases is 15.4 months in this District and 14.7 months in the Southern District of New York, and the six-year average is 14.9 months and 14.6 months, respectively.  *See* United States District Courts – National Judicial Caseload Profile 2019, *available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf; *see also Coffee*, 113 F. Supp. 2d at 758-59 (considering "median disposition time of criminal cases").

### 10.   Other Special Considerations Favor Granting the Motion to Transfer

Many of the factors that govern motions to transfer are imbued with additional importance in this case because of special circumstances already described above, such as Mr. Aprahamian's family obligations and the ongoing COVID-19 pandemic.  One circumstance, however, requires emphasis:  As noted above and explained in Section II below, this District is an improper venue for Count Three as a matter of constitutional law.  In other words, if the case is not transferred, Count Three *must* be dismissed.  Courts routinely transfer cases to other districts even where venue is proper in the original district, as demonstrated by the dozen district court decisions cited above.  Where venue is *improper* in the original district for one or more counts, but proper in the potential transferee district, the case for transfer is even stronger.  *See United States v. Ayo*, 801 F. Supp. 2d 1323, 1333 (S.D. Ala. 2011) (transferring "the entire

13

action" because "the government cannot try the defendant in this District on [certain of the] charges").[11]

*      *      *

The relevant factors overwhelmingly favor transferring this case to the Southern District of New York, and none of the factors favors keeping the case in this District.  Indeed, this case resembles *Kennedy*, where a judge in this District granted a transfer to the District of New Jersey to prevent a "substantial inconvenience to the defendant."  1986 WL 6227, at *1.  The strong similarities include that:

- The defendant and his family lived in the transferee forum, so a Philadelphia trial would have resulted in increased "burden" and a potential loss of "emotional support."  *Id.*

- While the defendant could not definitively identify the witnesses who would testify at trial, the location of the defendant's residence and place of employment made it "likely" that "possible witnesses" resided in the transferee forum.  *Id.*

- While events relevant to the charges occurred in both venues, the "nerve center" of the charged scheme was in the transferee forum.  *Id.* at *2.

- Counsel who had "represented the defendant throughout the investigation" was located in the transferee forum.  *Id.*

- The defendant was a professional, and a trial in Philadelphia would be more "likely" to disrupt his work and result in "increased expense of travel and accommodations."  *Id.*

---

[11] Of course, all else being equal, Mr. Aprahamian would prefer to face two counts rather than three.  But the burden of a trial in this District is sufficiently severe that a transfer is preferable, even if it means that Count Three cannot be dismissed for lack of venue.  Moreover, seeking only the dismissal of Count Three would run the risk that, if the government decided to re-indict Count Three in the proper venue, Mr. Aprahamian would be forced to face charges twice in different forums.

- As there was "only one defendant," a transfer would "not require the government to duplicate expenses in conducting two separate trials."  *Id.*

In combination, these factors convinced the court that a transfer was "in the interests of justice." *Id.* at *3.  Here too, for the reasons discussed above, the Court should grant Mr. Aprahamian's motion to transfer this case to the Southern District of New York.

## II.   ALTERNATIVELY, COUNT THREE SHOULD BE DISMISSED FOR LACK OF VENUE

If the Court determines that the case should not be transferred, it must dismiss Count Three for lack of venue because the Constitution and Federal Rule of Criminal Procedure 18 prohibit the government from prosecuting Count Three in this District.

### A.  The Indictment Must Adequately Allege Venue For Every Offense

"Venue in criminal cases is more than a technicality; it involves 'matters that touch closely the fair administration of criminal justice and public confidence in it.'"  *United States v. Auernheimer*, 748 F.3d 525, 529 (3d Cir. 2014) (quoting *United States v. Johnson,* 323 U.S. 273, 276 (1944)).  "The proper place of colonial trials was so important to the founding generation that it was listed as a grievance in the Declaration of Independence."  *Id.* at 532.  Moreover, "[i]t was of such concern that the Constitution of the United States 'twice safeguards the defendant's venue right.'"  *Id.* (quoting *United States v. Cabrales*, 524 U.S. 1, 6 (1998)); *see also id.* at 540-41.  Article III provides that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed," U.S. Const. art. III, § 2, cl. 3, and the Sixth Amendment requires trial "by an impartial jury of the State and district wherein the crime shall have been committed," *id.* amend. VI.  The Federal Rules "echo[] the[se] constitutional commands," *Cabrales*, 524 U.S. at 6, and instruct that "the government must prosecute an offense in a district where the offense was committed."  Fed. R. Crim. P. 18.

15

The Supreme Court and the Third Circuit have instructed that "[v]enue should be narrowly construed." *Auernheimer*, 748 F.3d at 532-33 (citing *Johnson*, 323 U.S. at 276). And they have repeatedly reversed convictions or affirmed dismissals of counts on venue grounds. *See, e.g.*, *Cabrales*, 524 U.S. at 4-6, 10; *Travis v. United States*, 364 U.S. 631, 637 (1961); *United States v. Lombardo*, 241 U.S. 73, 76-79 (1916); *Auernheimer*, 748 F.3d at 529, 541; *United States v. Passodelis*, 615 F.2d 975, 978-79 (3d Cir. 1980); *United States v. Valenti*, 207 F.2d 242, 246 (3d Cir. 1953).

"[V]enue must be analyzed independently for each count." *Auernheimer*, 748 F.3d at 535. "[I]mproper venue" is "a defect in instituting the prosecution" that the defendant must challenge by pretrial motion. Fed. R. Crim. P. 12(b)(3)(A)(i). "In an indictment, the government must allege venue 'without a facially obvious defect.'" *United States v. Menendez*, 137 F. Supp. 3d 688, 694 (D.N.J. 2015) (quoting *United States v. Perez,* 280 F.3d 318, 327 (3d Cir. 2002)), *aff'd*, 831 F.3d 155 (3d Cir. 2016). The Court must "accept as true all allegations in the indictment" and determine whether "the allegation[s] [are] sufficient to support trial in the District." *United States v. Menendez*, 831 F.3d 155, 175-76 (3d Cir. 2016) (quotation marks omitted). If, as to a particular count, "the Indictment fails to allege sufficient facts for venue in the Eastern District of Pennsylvania," that count must be dismissed. *United States v. Woodard*, No. CR 13-25-5, 2017 WL 11463711, at *1 (E.D. Pa. Dec. 15, 2017); *accord Cabrales*, 524 U.S. at 3-5 (affirming pretrial dismissal of money laundering counts in Western District of Missouri where "[t]he laundering alleged in the indictment occurred entirely in Florida"); *Auernheimer*, 748 F.3d at 539 ("If the District Court had found venue lacking upon Auernheimer's motion to dismiss, there would have been no trial in New Jersey at all.").

16

**B. The Allegations In The Indictment Demonstrate That This District Is Not A Proper Venue For Count Three**

Count Three must be dismissed for lack of venue.  Not only does the Indictment fail to allege venue in this District, its allegations establish that venue is improper in this District, and that the only proper venue is the Southern District of New York.

Count Three charges Mr. Aprahamian with violating 18 U.S.C. § 1001(a)(2).  (Indictment at 15).  That statute punishes "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation."  18 U.S.C. § 1001(a)(2).  With respect to Count Three, the Indictment alleges that "in connection with an investigation being conducted in the Eastern District of Pennsylvania, defendant APRAHAMIAN was interviewed by an agent of the Federal Bureau of Investigation during a search of the premises of [Taro] and falsely stated that he never had a conversation with a competitor about the pricing of a product before that product was launched."  (Indictment ¶ 46).  The Indictment further alleges that Taro "ha[s] its principal place of business in New York."  (*Id.* ¶ 11).  In other words, the Indictment charges Mr. Aprahamian with making a false statement during an interview with an FBI agent in New York.  The *only* connection to the Eastern District of Pennsylvania alleged in the Indictment is that the "investigation [was] being conducted" there, in addition to New York.  (*Id.* ¶ 46).[12]

This is plainly insufficient.  The Constitution and Rule 18 require the government to prosecute a criminal defendant in the "State and district wherein the crime shall have been committed."  U.S. Const. amend. VI; *accord id.* art. III, § 2, cl. 3 (forbidding prosecution outside

---

[12] Indeed, the investigation is in fact being directed from Washington, D.C., where the Antitrust Division of the Department of Justice is located.

17

the "State where the said Crimes shall have been committed"); Fed. R. Crim. P. 18 (forbidding prosecution outside "a district where the offense was committed"). If Mr. Aprahamian "ma[de] [the] materially false . . . statement" charged in the Indictment, 18 U.S.C. § 1001(a)(2), he "committed" that crime in New York. In no sense whatsoever was the crime "committed" in Pennsylvania.[13] The straightforward text of the Constitution and Rule 18 therefore forbid prosecution in this District. This, alone, requires the Court to dismiss Count Three. *See, e.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 576 (2008) ("[T]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning.") (quoting *United States v. Sprague,* 282 U.S. 716, 731 (1931)); *Sprague*, 282 U.S. at 731 ("[W]here the [framers'] intention is clear there is no room for construction and no excuse for interpolation or addition."); *Reid v. Covert*, 354 U.S. 1, 8 n.7 (1957) (plurality) ("This Court has constantly reiterated that the language of the Constitution where clear and unambiguous must be given its plain evident meaning."); *Martin v. Hunter's Lessee*, 14 U.S. 304, 338-39 (1816) ("If the [Constitution's] text be clear and distinct, no restriction upon its plain and obvious import ought to be admitted, unless the inference be irresistible.").

Third Circuit precedent compels the same conclusion. In *United States v. Valenti*, 207 F.2d 242 (3d Cir. 1953), the Court reversed a § 1001 conviction obtained in New Jersey where

---

[13] *See Santos-Reyes v. Attorney Gen. of U.S.*, 660 F.3d 196, 199 (3d Cir. 2011) ("'Commit' means '[t]o perpetrate or perform.'") (quoting the Oxford English Dictionary, Online Edition); *see also id.* ("With respect to the word 'committed,' the unmistakable focus here is upon the alien's acts that constitute the crime, rather than the subsequent arrest."); *Doe v. Attorney Gen. of U.S.*, 659 F.3d 266, 271 (3d Cir. 2011) ("'to commit' means only 'to perpetrate'; a 'commission' is 'the act of doing or perpetrating'") (quoting Black's Law Dictionary (9th ed. 2009)); *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989) ("When a crime consists of a single noncontinuing act, it is 'committed' in the district where the act is performed.").

the evidence showed the defendant had filed a false affidavit with the National Labor Relations Board in either Pennsylvania or Washington, D.C.  The Court reasoned that "where the gist of an offense involves the question of the filing of a document with a public official, the offense is committed at the place fixed for filing."  *Id.* at 245.  As the Court explained in a subsequent case, "[t]he basis of the [*Valenti*] decision was that the act having legal significance [wa]s the filing of the [false] affidavit with the Board."  *United States v. Neff*, 212 F.2d 297, 300 n.6 (3d Cir. 1954) (quotation marks omitted).  "[S]ince on the evidence it was obvious that the affidavit must have been filed with the Board either in Philadelphia (where the Board had a branch office) . . . or in Washington[,] and it could not have been filed in New Jersey since the Board had no regional director's office in that state[,] the District Court in New Jersey did not have venue jurisdiction."  *Id.*  Analogously, here, the "act having legal significance" is the utterance of a purportedly false statement to an FBI agent, which occurred solely in New York.  That the statement allegedly related to an investigation in Pennsylvania does not alter the fact that the statement was both made and received in New York, rendering New York the only proper venue.

Similarly, in *United States v. Passodelis*, 615 F.2d 975 (3d Cir. 1980), the Court reversed a defendant's conviction in the Middle District of Pennsylvania under a statute that prohibited "making a [political] contribution in the name of another person."  *Id.* at 977.  The evidence suggested that the defendant gave checks to an intermediary in the Western District, who delivered them to a political candidate in the Middle District.  *Id.* at 977-78.  The intermediary was not the defendant's agent (rather, he was acting on behalf of the candidate), so his acts in the Middle District could not be attributed to the defendant.  *Id.*  Instead, "the crimes were complete in the Western District," and venue was improper in the Middle District.  *Id.* at 978.  The

implication of *Passodelis* is that when Mr. Aprahamian made statements to an FBI agent in New York, the alleged crime was complete, and venue could not lie elsewhere.

These decisions are controlling, and they require dismissal of Count Three.  Moreover, several courts that have considered the exact question here—including two Courts of Appeals—have dismissed § 1001 charges for improper venue.  In *United States v. Smith*, 641 F.3d 1200 (10th Cir. 2011), the defendant made false statements to an FBI agent in Minnesota, but was prosecuted in Oklahoma, where the investigation was based.  The Tenth Circuit reversed the § 1001 conviction, holding that "venue lay in Minnesota, not Oklahoma," because "the false statements were 'made' in Minnesota."  *Id.* at 1208-09.  That was "*where [the crime] was committed*," and accordingly, "[t]he Constitution and Rule 18 are clear" that the prosecution cannot proceed anywhere else.  *Id.* at 1208.  Similarly, in *United States v. John*, 477 F. App'x 570 (11th Cir. 2012), the Eleventh Circuit vacated a § 1001 conviction because "venue is proper only in the district or districts where the defendant made the false statement," even if the "statement was material to a government investigation" in another district.  *Id.* at 572.  And in *United States v. Bin Laden*, 146 F. Supp. 2d 373 (S.D.N.Y. 2001), the court dismissed a § 1001 count for lack of venue, holding that because the defendant's "allegedly false statements to the FBI were uttered and received wholly inside Texas," the offense "began, continued, and was completed in just one federal judicial district—*i.e.*, the Northern District of Texas."  *Id.* at 377.  Even if the "false statements to the FBI in Texas somehow impacted the investigation in the Southern District of New York," there was "no basis for venue" in New York.  *Id.*

These courts relied on the Supreme Court's longstanding framework for deciding questions of venue, which clearly indicates that venue is improper for Count Three.  Where Congress has not specified the venue for a criminal statute, the Court must "determine the

crime's *locus delicti*," meaning the "place where [the] offense was committed." *Auernheimer*, 748 F.3d at 532 (quotation marks omitted).  The Court "must [1] initially identify the conduct constituting the offense . . . and then [2] discern the location of the commission of the criminal acts." *Id.* (quoting *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999)).  The Court "must be careful to separate 'essential conduct elements' from 'circumstance element[s],'" as "[o]nly 'essential conduct elements' can provide the basis for venue." *Id.* at 533 (quoting, *e.g.*, *Rodriguez-Moreno*, 526 U.S. at 280 & n.4).

Applying this framework in *United States v. Cabrales*, the Supreme Court affirmed the dismissal of a money-laundering conviction in the District of Missouri because while the laundered money "derived from the unlawful distribution of cocaine in Missouri," the defendant's laundering activity "occurred entirely in Florida."  524 U.S. at 3-4.  The Court reasoned that the money-laundering statutes "interdict only the financial transactions[,] . . . not the anterior criminal conduct that yielded the funds," even though that anterior conduct was "an essential element" of the money-laundering offense.  *Id.* at 7.

The following year, in *United States v. Rodriguez-Moreno*, the Supreme Court held that "venue in a prosecution for using or carrying a firearm 'during and in relation to any crime of violence,' in violation of 18 U.S.C. § 924(c)(1), is proper in any district where the crime of violence was committed, even if the firearm was used or carried only in a single district."  526 U.S. at 276.  While the only "verbs of the statute" appeared in the phrase "uses or carries a firearm," the requirement of an underlying "crime of violence" necessarily involved the "defendant's [other] violent acts."  *Id.* at 279-80.  Accordingly, these other "violent acts are essential *conduct* elements" that could give rise to venue as well.  *Id.* at 280 (emphasis added). The Court distinguished *Cabrales* because there, "[t]he existence of criminally generated

proceeds was a *circumstance* element of the offense[,] but the proscribed *conduct* [was the] defendant's money laundering activity." *Id.* at 280 n.4 (quotation marks omitted) (emphasis added); *see also Auernheimer*, 748 F.3d at 533 ("Although [the drug activity] was an element of the crime that the Government had to prove to the jury, it was a 'circumstance element' because it was simply a fact that existed at the time that the defendant performed her laundering acts.").

The Supreme Court has not applied this framework to § 1001, but its prior analysis of the statute makes it a foregone conclusion that venue is proper *only* where the defendant "ma[kes]" the false statement.  18 U.S.C. § 1001(a)(2).  In *United States v. Yermian*, 468 U.S. 63 (1984), the Supreme Court held that "the making of 'false, fictitious or fraudulent statements'" is "the prohibited *conduct*" in § 1001.  *Id.* at 69 (emphasis added).  The fact that "those statements [are] made in a matter within the jurisdiction of a federal agency" is simply a "predicate *circumstance*" that exists at the time of the conduct.  *Id.* (emphasis added).  *Yermian* was analyzing the scope of *mens rea*, but its analysis applies equally to venue.  As "[o]nly 'essential conduct elements' can provide the basis for venue," *Auernheimer*, 748 F.3d at 533, venue is proper only in the district where the statement was made—not in every district touched by the underlying government matter.  *See Smith*, 641 F.3d at 1207-09; *John*, 477 F. App'x at 572; *Bin Laden*, 146 F. Supp. 2d at 377.

Count Three alleges that Mr. Aprahamian made a false statement in New York, not Pennsylvania.  As the alleged crime "began, continued, and w[as] completed" in New York, the government must prosecute it there.  *Cabrales,* 524 U.S. at 8.  If this case remains in this District, Count Three must be dismissed.

### C. The Non-Binding Decisions That Construe § 1001 Venue More Broadly Are Demonstrably Incorrect

A handful of courts have found that the location of the government investigation that was impacted by the defendant's false statement can be a basis for venue in a § 1001(a)(2) prosecution. As explained above, this conclusion flies in the face of the Constitution's text and binding Third Circuit precedent, none of which these courts considered. But even if this court were not bound to follow these authorities, the reasoning of these courts is unpersuasive and should be rejected.

These courts conclude that because "Section 1001 explicitly criminalizes only those false statements that are material," the materiality element permits the court "to consider the crime as continuing into the district in which the effects of the false statement are felt," such as the district of the underlying investigation. *United States v. Salinas*, 373 F.3d 161, 167 (1st Cir. 2004) (in *dicta*); *accord United States v. Coplan*, 703 F.3d 46, 78-79 (2d Cir. 2012); *United States v. Oceanpro Indus., Ltd.*, 674 F.3d 323, 329-30 (4th Cir. 2012); *United States v. Ringer*, 300 F.3d 788, 790-92 (7th Cir. 2002); *United States v. Brennan*, No. CR 19-507, 2020 WL 1684149, at *5-9 (E.D. Pa. Apr. 7, 2020). According to these courts, "the word 'materially'" is part of § 1001(a)(2)'s "conduct element," and it "references effects, making effects-based venue possible." *Brennan*, 2020 WL 1684149, at *7.

This analysis is wrong in several key respects. In addition to misapplying Supreme Court precedent (as discussed further below), it has implications that are inconsistent with any coherent system of venue. If "materiality" were the key element that broadens venue, then under an identical statute without a materiality element, the defendant could be prosecuted only in the

district where he made the false statement.[14]  But there is no principled reason to treat § 1001(a)(2) differently because the false statement must be "material."  The materiality requirement *limits* the scope of criminal conduct and protects the defendant—it cannot seriously be considered a basis to *expand* the government's choice of venue.  It would be extraordinary for Congress to transform the venue analysis by using the single word "materially"; "Congress does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626-27 (2018) (quotation marks omitted).  And even if that were Congress's intent (which it plainly was not), Congress does not have authority to override the Constitution, which limits venue to locations where the crime was "committed," not merely "felt."

More fundamentally, while the word "materially" in § 1001(a)(2) conveys the essential element of materiality, it is not a "conduct element" and therefore cannot provide a basis for venue.  *Auernheimer*, 748 F.3d at 533.  The *only* conduct in § 1001(a)(2) is "making" the materially false statement.  *Yermian*, 468 U.S. at 69.  The word "materially" simply refers to a characteristic of the statement.  It does not suggest that the defendant took any act in any location other than where he or she made the statement, and therefore does not expand venue.

One court in this District has concluded otherwise, *see Brennan*, 2020 WL 1684149, at *7-9, but it failed to consider the constitutional text and binding Third Circuit precedent discussed above, and its reasons for basing venue on the materiality element are mistaken.  The

---

[14] That is precisely what one of these courts has held.  In *Salinas*, the First Circuit vacated a passport-fraud conviction for lack of venue because unlike § 1001, that statute "requires only two things: (i) the making of a false statement, (ii) with the intent to secure the issuance of a passport," and "does not contain any materiality requirement."  373 F.3d at 165-67.  Even though the State Department processed the defendant's fraudulent application in New Hampshire, the fraud "[wa]s complete" once the defendant submitted the application in New York, and thus New Hampshire was an improper venue.  *Id.* at 165.

*Brennan* court believed that basing venue solely on where the statement was made would "deviate[] from the text" of the statute by "carv[ing] the word 'materially' out of the . . . provision's conduct-focused clause." *Id.* at *7. But not all words in the statute are relevant to venue. The "conduct-focused clause" of the statute ("makes any materially false, fictitious, or fraudulent statement or representation") contains many words that *no* court believes provides a basis for venue. For example, the government plainly cannot prosecute a § 1001(a)(2) violation in a particular district merely because the "statement" refers to that location, or because evidence of the statement's "falsity" is located there. The statute refers to only one type of conduct— "making" the statement—and the circumstances of the statement such as its falsity, materiality, and meaning have nothing to do with where the crime was "committed" for purposes of venue.[15]

The *Brennan* court also believed that limiting venue to where the defendant "makes" the statement would require applying the "restrictive 'verb test'" for venue that the Supreme Court "warned courts against using" in *Rodriguez-Moreno*. 2020 WL 1684149, at *7. But in *Rodriguez-Moreno*, the Supreme Court did not hold that words other than verbs necessarily provide a basis for venue in every statute. Rather, the Court merely instructed that while "the

---

[15] In another variation on the same theme, the *Brennan* court also found that declining to base venue on the materiality element would "expand[] § 1001's scope beyond its textual limits" because materiality is "a line between proscribed and permissible conduct." 2020 WL 1684149, at *7. But materiality is not unique in that regard; the falsity element also separates "proscribed and permissible conduct," and it plainly is not a basis for venue. Nor does *Brennan* (or any other decision that bases venue on materiality) test the validity of its reasoning by applying it to *Cabrales*. The statutes in *Cabrales* contain "conduct-focused clauses" that refer *both* to financial transactions *and* the underlying criminal activity that generated the proceeds being transacted. *See* 18 U.S.C. § 1956(a)(1) ("conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity"); *id.* § 1957(a) ("engages or attempts to engage in a monetary transaction in criminal derived property"). The underlying criminal activity appears in the "conduct-focused clauses" and is an essential "line between proscribed and permissible conduct," but the Supreme Court nevertheless held that it provides no basis for venue. *See Cabrales*, 524 U.S. at 3-4.

'verb test' certainly has value as an interpretive tool," words other than verbs could identify other "conduct prohibited by the statute."  526 U.S. at 280.  Construing 18 U.S.C. § 924(c)(1), the Court looked beyond the statute's verbs ("uses or carries a firearm") to conclude that a separate "element . . . embedded in a prepositional phrase" was a basis for venue, but it did so only because that element ("during and in relation to any crime of violence") referred to the "*defendant's [own] violent acts*."  *Id.* (emphasis added).  In effect, the statute "proscribed both the use of the firearm *and* the commission of acts that constitute a violent crime"—"two distinct conduct elements," each of which constituted an independent basis for venue.  *Id.* at 280-81.

The specific acts of the defendant identified in the statute undoubtedly could provide the basis for venue, since the key question is where the defendant's "conduct . . . occurred." *Auernheimer*, 748 F.3d at 535-36.  In *Cabrales*, by contrast, the location of the underlying drug crimes was irrelevant even though they were indisputably a type of "conduct"; the statute did not require the defendant to perform that conduct, unlike the underlying "crime of violence" in *Rodriguez-Moreno*.  Here, also unlike the "crime of violence" element in *Rodriguez-Moreno*, the word "materially" in § 1001(a)(2) does not refer to any conduct of the defendant other than the conduct identified by the statute's verb: making a materially false statement.  Section 1001(a)(2) forbids a single act, not multiple acts in combination like § 924(c)(1), and here, that act took place only in New York.

Finally, the *Brennan* court reasoned that § 1001(a)(2) was like the Hobbs Act, which it believed the Third Circuit had construed as being "'defined in terms of its effects' for venue purposes."  2020 WL 1684149, at *8.  However, the Third Circuit has not held that the Hobbs Act should be so construed.  In *Auernheimer*, one panel suggested in *dicta* that where "an essential conduct element is itself defined in terms of its effects," the "location in which a

crime's effects are felt is relevant to determining whether venue is proper," and it cited the Hobbs Act as an example, relying on a Second Circuit case. 748 F.3d at 537 (quotation marks omitted). But it recognized that the Supreme Court had never endorsed this "effects" test, *see id.*, and the Third Circuit has never accepted this invitation to apply it either, whether to the Hobbs Act or any other statute. In any event, "the terms of the [Hobbs Act] themselves forbid affecting commerce," *id.*, by punishing "[w]hoever in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion," 18 U.S.C. § 1951(a). It is plausible that a defendant "obstructs, delays, or affects commerce" in the district where commerce has been obstructed, delayed, or affected. But a defendant "makes" a materially false statement only in the district or districts where the statement is uttered or received—not in every other district where the statement's effects happen to be felt.

It bears emphasis that the location of the investigation affected by the defendant's statement is a circumstance chosen by the government, not by the defendant. "Venue issues are animated in part by the danger of allowing the Government to choose its forum free from any external constraints," which would result in the conviction of defendants "in a distant, remote, or unfriendly forum solely at the prosecutor's whim." *Auernheimer*, 748 F.3d at 540-41 (quotation marks and alterations omitted); *see also id.* at 532-33 ("Venue should be narrowly construed."). If venue for § 1001 charges were proper wherever the government chose to base its investigation, there would be no limits whatsoever on the government's choice of forum. That is simply not the law.

Thus, venue for Count Three is improper in this District even if the alleged false statement were material to an investigation in this District.

27

## CONCLUSION

For the foregoing reasons, the Court should grant Mr. Aprahamian's motion and transfer this prosecution to the Southern District of New York, preferably to the White Plains courthouse. In the alternative, the Court should dismiss Count Three for lack of venue.

Dated:       May 18, 2020
              New York, New York               Respectfully submitted,


                                        /s/ Alexandra A.E. Shapiro

G. Robert Gage, Jr.                       Alexandra A.E. Shapiro
Gage Spencer & Fleming LLP          Fabien M. Thayamballi
410 Park Avenue, Suite 900           Shapiro Arato LLP
New York, NY 10022                  500 Fifth Avenue, 40th Floor
(212) 768-4900                     New York, New York 10110
grgage@gagespencer.com            (212) 257-4880
                                          ashapiro@shapiroarato.com
Caroline Goldner Cinquanto          fthayamballi@shapiroarato.com
The Law Firm of Caroline Goldner Cinquanto
123 S. Broad Street, Suite 2500
Philadelphia, PA 19109
(215) 735-1600
carrie@cglegal.com


                                          *Attorneys for Defendant Ara Aprahamian*

## **CERTIFICATE OF SERVICE**

I hereby certify that this pleading was served via the Court's electronic filing system on this

18th day of May, 2020, on the government's counsel:

Kevin B. Hart
United States Department of Justice
450 5th Street NW
Washington, DC 20530
kevin.hart@usdoj.gov

/s/ Alexandra A.E. Shapiro
Alexandra A.E. Shapiro