IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 20-64 |
| ARA APRAHAMIAN | : | |

## MEMORANDUM

**SURRICK, J.**                                                      **JANUARY 25, 2022**

Presently before the Court is Defendant Ara Aprahamian's Motion To Transfer Or, In The Alternative, To Dismiss Count Three (ECF No. 33).  Defendant, a former pharmaceutical executive, is charged with conspiring to rig bids, stabilize, maintain, and fix prices of generic drugs, as well as making a materially false statement about his conduct to investigators.  He lives and works in the Southern District of New York, but his co-conspirators lived and worked in the Eastern District of Pennsylvania.  Defendant requests that we transfer all of the charges against him to the Southern District of New York for his convenience, or in the alternative, that we dismiss the charge of making materially false, fictitious, or fraudulent statements in connection with an investigation for lack of venue.  For the following reasons, Defendant's Motion To Transfer Or, In The Alternative, To Dismiss Count Three will be denied.

## I.    BACKGROUND

In order to decide Defendant's Motion, we must assess the conduct, locations, and effects of the alleged crimes, as well as examine the personal circumstances of Defendant, his family, and the Government's witnesses.

Defendant is a former Vice President of Rx Marketing and a former Vice President of Sales and Marketing of Taro Pharmaceuticals U.S.A. ("Taro").  (Indictment ¶ 10, ECF No. 1);

(*see* Def.'s Mot. to Transfer or Dismiss, 9) (identifying Company A as Taro Pharmaceuticals U.S.A.)  The Government alleges that Defendant colluded with Companies B and C to rig bids, stabilize, maintain, and fix prices of generic drugs.  (*Id.* at ¶ 20-31, 37-43.)  Even though Defendant lives in New York, three co-conspirators resided in this District; Company C was headquartered in this District; and the co-conspirators acted in furtherance of the conspiracy in this District by communicating with competitors about non-public drug prices, selling drugs to at least one major company headquartered in this District, and submitting bids and offers to at least one major company headquartered here.  (*Id.* at ¶ 20-28, 33, 37-42); (Gov't Resp. in Opp'n to Def.'s Mot. to Transfer or Dismiss Count Three, 3, ECF No. 36.)  During a search of Taro's offices in the Southern District of New York, Defendant allegedly made false statements to law enforcement officers, who were conducting an investigation of this conduct in the Eastern District of Pennsylvania.  (*Id.* at ¶ 46.)  As a result, he is charged with two counts of conspiracy to restrain trade under the Sherman Act, 15 U.S.C. § 1, and one count of making materially false, fictitious, or fraudulent statements in connection with an investigation under 18 U.S.C. § 1001(a)(2) ("Section 1001").  The investigation has resulted in charges against three individual defendants and four corporate defendants.  All of these matters were filed in this Court.

Defendant is a former executive of Taro, a pharmaceutical company headquartered in the Southern District of New York.  (Def.'s Mot., 4.)  He is a resident of the Southern District of New York's Rockland County and lives there with his wife, high school age daughter, and college age daughter.  (*Id.*)  He also cares for his elderly mother, who lives a short drive from him.  (*Id.* at 5.)  He visits her weekly and does various tasks for her, such as grocery shopping and home maintenance.  (*Id.* at 5-6.)

Defendant lives close to his two proposed venues for trial within his District: the White Plains courthouse (15 miles from his home) and the Manhattan courthouse (34 miles from his home). (Gov't Resp., 5.) Defendant proposes that he be tried in one of those courthouses, although he would prefer to be tried at the White Plains courthouse. (Def.'s Mot., 7.) He lives 118 miles from the Philadelphia courthouse. (Gov't Resp., 5.) The Philadelphia courthouse is close to a major airport and train station; the White Plains courthouse has no Amtrak station and is close to a small airport. (*Id.* at 12-13.)

## II.    LEGAL STANDARD

A defendant may move to transfer the proceedings "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). The United States Supreme Court has held that courts should consider the following ten (10) factors in determining whether discretionary transfer is appropriate:

> (1) location of defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

*Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964). The defendant need not show "truly compelling circumstances" for transfer, just that "all relevant things considered, the case would be better off transferred to another district." *In re U.S.*, 273 F.3d 380, 388 (3d Cir. 2001) (internal citations omitted). It is the defendant's burden to prove that the court should transfer the matter. *Id.*

In the alternative, Defendant requests that we dismiss the Section 1001 charge. If a defendant believes the venue is improper, he or she may move to dismiss an indictment on that basis. F. R. Crim. P. 12(b)(3)(A)(i). Generally, "the government must prosecute an offense in a

3

district where the offense was committed." Fed. R. Crim. P. 18. However, the offense may be prosecuted in one or any of the districts in which the crucial elements are performed if the statute permits multi-district prosecution. *United States v. Perez,* 280 F.3d 318, 329 (3d Cir. 2002). Additionally, if the crime is a "continuing offense," meaning it was "begun in one district and completed in another," it may be "prosecuted in any district in which [the] offense was begun, continued, or completed." 18 U.S.C. § 3237(a).

In analyzing a motion to dismiss for improper venue, a court may only consider the indictment and must take all allegations as true. *United States v. Menendez*, 137 F. Supp. 3d 688, 692 (D.N.J. 2015). At the pretrial stage, a motion to dismiss should not be used to address the sufficiency of the Government's evidence on venue; however, at subsequent stages, a defendant may argue that the Government has not met its burden to show venue was proper by a preponderance of the evidence. *United States v. Menendez*, 831 F.3d 155, 176 n.3 (3d Cir. 2016).

## III.   DISCUSSION

Defendant requests that we transfer this matter from the Eastern District of Pennsylvania to the Southern District of New York. However, after analyzing the ten-factor test, we conclude the bulk of the factors relevant to discretionary transfer do not weigh in Defendant's favor. In the alternative, Defendant requests that we dismiss the Section 1001 charge for making a materially false statement to authorities because he made the statement in New York. We reject this request because, like a majority of Circuits, we hold that Section 1001's requirement that the false statements be material permits prosecution in the district where it was rendered material. Moreover, his violation of Section 1001 was a continuing offense that began in New York but

continued here.  For these reasons, we will deny his Motion to Transfer and Motion to Dismiss. The Motion to Dismiss will be denied without prejudice.[1]

A.     **Transfer of Venue**

Defendant asserts that, because he lives, works, and is alleged to have operated his price fixing scheme out of New York, we should exercise our discretion and transfer his case to the Southern District of New York, even though he only lives two hours from Philadelphia and many of his co-conspirators operated here.  A defendant may move to transfer a proceeding "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."  Fed. R. Crim. P. 21(b).  To determine whether transfer is appropriate, courts must analyze the ten factors set forth in *Platt v. Minnesota Mining & Mfg. Co*.  We will now address those factors.

*1.  Location of Defendant*

"[A] defendant is not entitled to defend his case in his or her home district."  *In re U.S.*, 273 F.3d 380, 388 (3d Cir. 2001).  However, courts consider the hardship that a defendant's location places on his or her ability to attend trial.  *United States v. Coffee*, 113 F. Supp. 2d 751, 754 (E.D. Pa. 2000) (finding transfer appropriate where defendants had to drive 545 miles to attend a hearing and slept in their car because they could not afford lodging); *United States v. Negron,* No. 08-501, 2008 WL 5272056, at *3 (D.N.J. Dec. 16, 2008) (finding transfer from New Jersey appropriate where defendant lived in Puerto Rico for thirty years and had no friends or family in New Jersey).

---

[1] Defendant also seeks leave to file a reply brief to afford him the opportunity to reply to the Government's claim that Section 1001 is a "continuing offense," which was raised in its Opposition.  (Def.'s Mot. for Leave to File Reply, 1, ECF No. 37.)  The Government does not oppose Defendant's request.  We find further elaboration helpful and grant his Motion for Leave to File Reply.  We have considered the reply brief that he attached to his Motion.

Defendant asserts that a two-hour commute to trial would substantially inconvenience him and his elderly mother, whom he cares for on a weekly basis by doing grocery shopping and home maintenance.  (Def.'s Mot. 5-6.)  We disagree.  A two-hour trip each way is not so burdensome that Defendant could not stay at his home for the duration of trial and be able to tend to his mother's occasional needs.  Moreover, Defendant has not shown that he would have difficulty affording lodging in Philadelphia.  We find that this commute is not unreasonable in the absence of a showing of substantial financial or personal hardship.  While trial would certainly be closer to Defendant's home were it held in White Plains, we do not find that his living in New York weighs in favor of transferring the case there.

### 2.   Location of Possible Witnesses

In assessing whether the location of possible witnesses would merit transfer of the proceedings, courts look at the distance that witnesses from both parties would have to travel and whether the witnesses have personal circumstances that would affect their ability to travel.  *See United States v. Menendez*, 109 F. Supp. 3d 720, 728 (D.N.J. 2015); *United States v. Atwood*, 538 F. Supp. 1206, 1208 (E.D. Pa. 1982) (noting health problems are a significant consideration); *United States v. Haley*, 504 F. Supp. 1124, 1127 (E.D. Pa. 1981) (holding that eight defense witnesses being unwilling or unable to travel from Georgia for trial weighed in favor of transfer).

Defendant avers that thirty-three (33) potential witnesses reside in the New York City area (including unnamed Taro executives), twenty-four (24) in the Philadelphia area, and twenty-seven (27) are far from both contemplated locations for trial.  The Government contests this estimation:  it argues that his analysis is based on a list of people of interest in a related civil lawsuit, not intended witnesses for the upcoming criminal trial.  Moreover, the Government

asserts that three of its four cooperating witnesses (who will provide a substantial portion of the testimony in the Government's case) live within this District, and none of them live in the Southern District of New York.

Regardless of the dispute over how many potential witnesses live in each location, it does not appear that any of Defendant's witnesses would face any unusual burden in commuting from New York to Philadelphia, and courts have found similar commutes are not unduly inconvenient. In *McDade*, another court in this District noted that requiring a witness to travel between Scranton and Philadelphia was "not so great a trip as to require a transfer." *United States v. McDade*, 827 F. Supp. 1153, 1189 (E.D. Pa. 1993). The distance between both New York courthouses and Philadelphia is nearly identical to the distance between Philadelphia and Scranton: only a four-hour car ride roundtrip. In the absence of a showing that defense witnesses would be seriously inconvenienced by trial occurring here, we find this factor does not weigh in favor of transfer.

### 3.  *Location of Events Likely to be in Issue*

When determining the location of events likely to be at issue in conspiracy cases, courts assess where the "nerve center" of the events is. Courts differ in assessing what facts render a location the nerve center. Some courts consider where a conspiracy's impacts were felt, while others consider where the agreement was made. *See United States v. Wecker*, 620 F. Supp. 1002, 1005 (D. Del. 1985); *Negron*, No. 08-501, 2008 WL 5272056, at *4. Some consider co-conspirators' conduct, while others focus on the defendant's actions. *See United States v. Maruyasu Industries Co. Ltd*, 229 F.Supp.3d 659, 676 (S.D. Ohio 2016); *Negron*, No. 08-501, 2008 WL 5272056, at *4. Some courts reject nerve center arguments where the indictments allegations span national or international operations. *Menendez*, 109 F. Supp. 3d at 729.

The Government asserts that Defendant's alleged conspiracies with Companies B and C affected nationwide drug markets, and his co-conspirators committed overt acts in this District. Defendant and Taro operated out of the Southern District of New York.  Company C's headquarters and some customers are located in the Eastern District of Pennsylvania.  Moreover, Defendant allegedly made false statements to investigators while in the Southern District of New York that obstructed a grand jury investigation the Eastern District of Pennsylvania as well. Defendant argues that the nerve center of his alleged crimes was in New York.  The Government argues that his co-conspirators' actions rendered the nerve center in Philadelphia.

There are compelling arguments to support each side:  Defendant primarily operated out of and conspired within New York, but Philadelphia is where his conspirators worked and resided and where the investigation into their conduct arose.  We find that this factor is neutral, but this factor is not dispositive of Defendant's Motion, as will be shown.

### 4.  Location of Documents and Records Likely to be Involved

Defendant does not argue that this factor weighs in his favor.

### 5.  Disruption of Defendant's Business

In assessing the disruption of a defendant's business, courts consider the nature of the defendant's job and whether the defendant will have to stop working during the trial absent transfer.  *See Coffee*, 113 F. Supp. 2d at 756.  Defendant avers that he no longer works for Taro and "is making efforts to work from his home as a pharmaceutical consultant, but it is not an easy task." (Def.'s Mot. 10.)  It is unclear at best what his work entails (or if he is working at all), and importantly, Defendant has indicated that it is possible to work from home.  Defendant has not shown that he is unable to continue his work from Philadelphia.  This factor does not weigh in favor of transfer.

### 6.  Expense to the Parties

In assessing the expense to the parties, courts do not merely consider whether a defendant would have greater expenses in one district, but whether the expenses would be excessive or prohibitive. *See Wecker*, 620 F. Supp. at 1005.  Some courts put little weight on expenses to the Government, while others consider the Government's expenses alongside a defendant's. *See Coffee*, 113 F. Supp. 2d at 757  ("The United States of America has, for all practical purposes, unlimited financial resources to bring to bear."); *but see Atwood*, 538 F. Supp. at 1209  ("[W]hile the government has greater resources with which to pay travel and lodging expenses, public funds are to be safeguarded.").  Defendant has not alleged that he would have difficulty paying the difference in expenses incurred for trial within this District.  Therefore, we find this factor does not weigh in favor of transfer.

### 7.  Location of Counsel

While Defendant has retained local counsel in Philadelphia, he also has trial counsel, who has represented him since the beginning of the investigation leading up to the charges, in New York.  Defendant also points out that the Antitrust Division of the Department of Justice is operating out of Washington, D.C..  However, if the case was transferred, any prosecutors operating out of Washington, D.C. would be required to travel nearly twice their current commute to reach the Southern District of New York.  Given that Philadelphia is the natural middle point between New York and Washington, D.C., this District is a more convenient location for counsel on both sides.  This factor weighs against transfer.

### 8.  Relative Accessibility of Place of Trial

Courts in this District have repeatedly held that Philadelphia is generally an accessible location from places much further than White Plains, New York.  *See United States v. Bloom*, 78

9

F.R.D. 591, 610 (E.D. Pa. 1977) ("Philadelphia, served by railroads and major airlines is an accessible location, even for the Florida defendants."); *United States v. Hays*, No. 96-51-02, 1997 WL 34666, at *5 (E.D. Pa. Jan. 29, 1997) ("Philadelphia, served by railroads, airlines (both domestic and international) and major arteries of our interstate highway system, is an accessible location, even for a defendant from Utah.").  Defendant can easily drive to Philadelphia, or he can take a bus, train, or plane if he so chooses.  Meanwhile, White Plains has no Amtrak station and a small airport, making it less accessible.  This factor weighs against transfer.

### 9.  *Docket Conditions of Each District Involved*

In examining the docket conditions of each District involved, courts look to available statistics, including the median disposition time of criminal cases in each District.  *See Coffee*, 113 F. Supp. 2d at 759.  In the Southern District of New York, the median time from filing to disposition of a criminal felony case is 18 months; in the Eastern District of Pennsylvania, it is 19.1 months.  *See* United States District Courts – National Judicial Caseload Profile 2021, available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison 0630.2021.pdf.  This difference is minor, but it does slightly weigh in favor of transfer. *See Coffee*, 113 F. Supp. 2d at 759 (finding less than one month difference in median disposal time favored transfer).

### 10. *Special Elements*

Finally, courts may consider elements specific to a defendant's case in determining whether transfer is appropriate.  One of the elements that courts consider is whether a defendant's case and other cases tried in the same court involve overlapping or similar evidence and witnesses.  *United States v. Massaro*, No. 12-148, 2012 WL 2415861, at *3 (E.D. Va. June 26, 2012); *see United States v. Santurtan-Teran*, No. 17-298, 2021 WL 2371231, at *5 (M.D. Pa.

June 9, 2021) ("Considering other elements which might affect the transfer, Defendant is one of eight Defendants charged in the Indictment, six Defendants have pled guilty, and the Court is very familiar with this case."). Courts are reluctant to squander the Government's and courts' resources by separating related cases. *See id.*

In addition to the charged Defendant, the Government has also charged two other individual co-conspirators and four corporate defendants. All these matters were filed in this Court. These cases arose out the same investigation into generic drug price fixing, which may result in additional charges. It would make no sense to require another District Court to familiarize itself with this matter simply to reduce Defendant's commute. This factor weighs strongly against transfer.

Ultimately, eight (8) factors weigh in favor of transfer, one (1) factor weighs against transfer, and one (1) factor is neutral. Since Defendant has failed to show that the case would be better off if transferred to the Southern District of New York, his Motion will be denied.

### B.    Dismissal for Lack of Venue

As an alternative to his Motion for Transfer, Defendant moves to dismiss Count Three of the Indictment for lack of venue pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A)(i). Count Three charges Defendant with making materially false, fictitious, or fraudulent statements in connection with an investigation, in violation of 18 U.S.C. § 1001(a)(2) ("Section 1001"). Pursuant to an investigation arising out of the Eastern District of Pennsylvania, Defendant made allegedly false statements to an investigator during a search of his office in the Southern District of New York. Defendant argues that our District is not a proper venue because the crime occurred in New York. However, the effects-based analysis that a majority of circuits and our

sister court apply is applicable here.  Applying the effects-based analysis, venue is proper in our District because that is where the effects of his statements were felt.

In the alternative, the Government asserts that Defendant's motion to dismiss must be denied under the continuing offense doctrine, which states that offenses that are "begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).  Venue is also proper under this theory because the false statements were made in New York but material to the investigation originating in this District.

### 1.  Statutory Interpretation of Section 1001

In determining whether we can apply effects-based analysis to Section 1001, we must address the statutory interpretation question of whether Section 1001(a)(2)'s use of the word "materially" means the statute's venue is defined in terms of its effects or whether the word has no impact on its venue requirements.  Section 1001(a)(2) makes it a crime for a person "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, [to] knowingly and willfully . . . make[] any materially false, fictitious, or fraudulent statement or representation."  A statement is material under Section 1001 when it has "a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed."  *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (internal citations and brackets omitted).  Materiality does not require that an agency actually rely upon the statement, only that the statement is capable of influencing a decision. *United States v. McBane*, 433 F.3d 344, 350 (3d Cir. 2005).

The First, Second, Fourth, and Seventh Circuits, as well as district courts within the Third Circuit, have determined that the statute's requirement that statements be *materially* false means

that the effect of such a statement expands the number of appropriate venues to include those in which the effect of the statement was felt.  *United States v. Coplan*, 703 F.3d 46, 79-80 (2d Cir. 2012); *United States v. Oceanpro Indus., Ltd.*, 674 F.3d 323, 329-30 (4th Cir. 2012); *United States v. Salinas*, 373 F.3d 161, 167 (1st Cir. 2004) (approving of theory that Section 1001's venue is determined by materiality element in dicta); *United States v. Ringer*, 300 F.3d 788, 792 (7th Cir. 2002); *United States v. Brennan*, 452 F. Supp. 3d 225, 233 (E.D. Pa. 2020); *United States v. Hartley*, No. 20-269, 2022 WL 54559, at *7-8 (M.D. Pa. Jan. 5, 2022).  The Tenth and Eleventh Circuits disagree, asserting that Section 1001's venue is only proper in the place where the statement was made, regardless of its effects.  *United States v. Smith* 641 F.3d 1200, 1207-08 (10th Cir. 2011); *United States v. John*, 477 F. App'x. 570, 572 (11th Cir. 2012).  Defendant urges us to adopt the Tenth and Eleventh Circuits' view.  We decline to do so.

Venue is a constitutionally protected safeguard, which requires that trials "be held in the State where the said Crimes shall have been committed."  U.S. Const. art. III, § 2, cl. 3; *see also* U.S. Const. amend VI  ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed.").  The Federal Rules of Criminal Procedure also require that "the government must prosecute an offense in a district where the offense was committed."  Fed. R. Crim. P. 18.  However, "Congress may prescribe specific venue requirements for particular crimes."  *United States v. Auernheimer*, 748 F.3d 525, 532 (3d Cir. 2014).

When Congress does not create venue requirements, courts must determine the crime's "locus delicti," meaning the "place where an offense was committed," by determining "the nature of the crime alleged and the location of the act or acts constituting it."  *Id.* (internal citations omitted).  "In performing this inquiry, a court must initially identify the conduct

constituting the offense (the nature of the crime) and then discern the location of the commission

of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999).  This

means that the court must identify a statute's "essential conduct elements" and its "circumstance

elements." *Brennan*, 452 F. Supp. 3d at 234.  A conduct element is an action that a criminal

statute prohibits.  *Id.*  A circumstance element is merely a fact that exists at the time the conduct

element is performed.  *Id.*  While essential conduct elements can be the basis for venue,

circumstance elements cannot.  *Auernheimer*, 748 F.3d at 533.  As our sister court explained, "if

Congress made it a crime to jaywalk at 2:00 p.m., the conduct element would be jaywalking,

while the circumstance element would be the time-of-day requirement."  *Brennan*, 452 F. Supp.

3d at 234 (quotation marks omitted).

When Congress creates venue requirements, it does so by defining the essential conduct

elements in terms of their effect or effects, so venue is appropriate where the effect is felt.

*Auernheimer*, 748 F.3d at 537 (citing *Rodriguez–Moreno,* 526 U.S. at 279 n.2).

> This "effects-based" test asks two questions: (1) did Congress define a crime's
> essential conduct elements in terms of their effect; and (2) if so, did the district in
> question *actually feel* the effects of the proscribed conduct? The first question is
> purely legal and may be addressed at the motion-to-dismiss stage. The
> second question is factual and must be proven by a preponderance of the evidence
> at trial.

*Brennan*, 452 F. Supp. 3d at 234–35  (emphasis in original).  Because we are at the motion-to-

dismiss stage, we must only determine whether Congress permitted effects-based analysis of

Section 1001 by defining an essential conduct element in terms of its effects.

Here, the essential conduct element is "making a materially false statement."  *Id.* at 235.

The word "materially" references the effects of the statement, thus permitting effects-based

venue.  *Coplan* 703 F.3d at 79; *Oceanpro*, 674 F.3d at 329.  To hold otherwise would render the

word "materially" superfluous.  This is precisely what the Supreme Court in *Rodriguez-Moreno*

discouraged courts from doing.  526 U.S. at 280 ("While the 'verb test' certainly has value as an

interpretative tool, it cannot be applied rigidly, to the exclusion of other relevant statutory

language.").  Moreover, "the materiality element defines *conduct*, not circumstances. Not all lies

are illegal under § 1001—only *material* lies. Congress drew a line between proscribed and

permissible conduct, and it used the word 'materially' to draw that line." *Brennan*, 452 F. Supp.

3d at 235.  We must consider the statement's effect in determining whether Defendant has

committed a prohibited action.[2]

---

[2] Defendant asserts that most Circuits contradict U.S. Supreme Court and Third Circuit precedent.  He cites a variety of cases in support of his conclusion, but none of them are availing. Defendant heavily relies upon *Travis v. United States*, 364 U.S. 631 (1961) and *United States v. Valenti*, 207 F.2d 242 (3d Cir. 1953).  Both cases involved defendants charged with filing a false non-Communist affidavit with the National Labor Relations Board in violation of section 9(h) of the National Labor Relations Act ("NLRA"), and section 35A of the Criminal Code, which was later replaced by Section 1001.  Both courts interpreted Section 9(h) of the NLRA's requirement that the affidavit be "on file" with the Board to mean that venue is only proper in the place where the false affidavit was made, not where it was received.  But *Travis* and *Valenti* interpreted the NLRA, not Section 1001.  "A number of courts have limited *Travis* to its particular facts. . . . For the same reasons we find *Travis* not controlling, *Valenti* is not applicable here."  *United States v. Donahue*, 885 F.2d 45, 51 n.22 (3d Cir. 1989); *see e.g., United States v. Mendel,* 746 F.2d 155, 165 (2d Cir.1984) (refusing to apply *Travis* to determine venue in Section 1001 prosecution); *United States v. Herberman,* 583 F.2d 222, 227 (5th Cir.1978) (same); *Menendez*, 137 F. Supp. 3d at 696 (same); *United States v. Simon*, 510 F. Supp 232, 237-38 (E.D. Pa. 1981) (same).
　　Defendant also cites *United States v. Passodelis*, 615 F.2d 975 (3d Cir. 1980), which is similarly distinguishable.  Passodelis was convicted of making over $1,000 in contributions to a candidate for federal office and making a contribution in the name of another person, in violation of 18 U.S.C. § 608(b)(1) and 18 U.S.C. § 614 respectively.  Neither statute had a materiality requirement.  Passodelis was not charged with violating Section 1001, which is the statute that we are tasked with interpreting.  For this reason, we find that *Passodelis* is not controlling either.
　　Defendant further relies on *United States v. Cabrales*, 524 U.S. 1 (1998).  This was a money laundering case where the funds originated in Missouri, the transactions were made in Florida, and the defendant was prosecuted in Missouri.  The court found that venue in Missouri was improper.  In assessing the same question of whether Section 1001 permits effects-based venue analysis, the Seventh Circuit distinguished the two issues by observing: "In *Cabrales,* the conduct in Missouri took place before the money laundering began, and relying on the continuing offense theory, the Supreme Court determined that the offense was not 'begun, continued, or completed,' in the language of 18 U.S.C. § 3237(a)."  *Ringer*, 300 F.3d at 792 n.3.

Defendant's Motion to Dismiss is denied without prejudice.  Defendant may later challenge at trial whether the Government has met its burden to prove that venue was proper by a preponderance of the evidence.

### 2.   Continuing Offense Doctrine

The Government also asserts that venue is proper in the Eastern District of Pennsylvania under the continuing offense doctrine. Under this doctrine, offenses that are "begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).  "This continuing-offense venue provision applies to section 1001."  *United States v. Menendez*, 291 F. Supp. 3d 606, 638 (D.N.J. 2018).  Where the essential conduct elements of the crime and the nature of the crime occur in more than one District, venue is proper in any of the Districts where any essential conduct element occurred.  *United States v. Ramirez*, 420 F.3d 134, 139 (2d Cir. 2005); *see Rodriguez-Moreno*, 526 U.S. at 281 ("[W]here a crime consists of distinct parts which have different localities [,] the whole may be tried where any part can be proved to have been done.").  The Government has the burden to prove that venue is proper by a preponderance of the evidence.  *Perez*, 280 F.3d at 330.

Courts within this Circuit have held that "false statements are considered continuing offenses due to the materiality element."  *United States v. Brassington*, No. 09-45, 2010 WL 3982036, at *13 (D.N.J. Oct. 8, 2010); *see also Simon*, 510 F. Supp. at 238.  When false statements are rendered material in this District, venue is also proper here under the continuing offense theory. *See United States v. Candella*, 487 F.2d 1223, 1228 (2d Cir. 1973).  Defendant

---

Once again, defendant's proffered case does not rely upon statutory interpretation of Section 1001.

does not dispute that his alleged statements could have or did affect the Government's investigation in this District.  (*See* Def.'s Reply.)  For the reasons stated above, Defendant's motion is denied without prejudice under the continuing offense doctrine.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion To Transfer Or, In The Alternative, To Dismiss Count Three will be denied.  The Motion to Dismiss is denied without prejudice.  An appropriate Order follows.

BY THE COURT:


*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**