**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

**UNITED STATES OF AMERICA,**

**- v. -**

**ARA APRAHAMIAN,**

**Defendant.**

**CRIMINAL NO: 20-CR-00064**

**HON. R. BARCLAY SURRICK**

**DEFENDANT ARA APRAHAMIAN'S MOTION TO SUPPRESS**
**OR FOR A *FRANKS* HEARING**

G. Robert Gage, Jr.
Gage Spencer & Fleming LLP
410 Park Avenue
New York, New York 10022
Tel: 212-768-4900
grgage@gagespencer.com

Caroline Goldner Cinquanto
Two Greenwood Square
3331 Street Road, Suite 450
Bensalem, PA 19020
(215) 910-2732
carrie@cgclegal.com

Alexandra A.E. Shapiro
Fabien M. Thayamballi
Shapiro Arato Bach LLP
1140 Avenue of the Americas, 17th Floor
New York, New York 10036
(212) 257-4880
ashapiro@shapiroarato.com
fthayamballi@shapiroarato.com

*Attorneys for Ara Aprahamian*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

LEGAL STANDARD UNDER *FRANKS* .................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 2

    A.  Warrant Application And Search of Taro's Headquarters.................................. 2

    B.  Indictment And Pretrial Discovery ............................................................... 5

ARGUMENT ........................................................................................................ 6

I.   THE WARRANT APPLICATION CONTAINED FALSEHOODS AND
    MISLEADING OMISSIONS ............................................................................. 6

    A.  The Affidavit Falsely Purported To Convey Information Based On Interviews
        ██████████████, And Falsely Reported That ███████████████
        ███████████████ ......................................................................... 6

    B.  The Warrant Application Intentionally Omitted Exculpatory Information
        Known To Investigators.............................................................................. 9

    C.  Any Reasonably Diligent Investigation Would Have Revealed Additional
        Information Contradicting The Probable Cause Statement ............................. 11

II. THE FALSEHOODS IN THE WARRANT APPLICATION WERE
    MATERIAL TO THE ISSUANCE OF THE WARRANT ..................................... 14

III. SUPPRESSION IS REQUIRED, OR IN THE ALTERNATIVE,
    A *FRANKS* HEARING IS WARRANTED ...................................................... 16

CONCLUSION.................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alvord-Polk, Inc. v. F. Schumacher & Co.*,
    37 F.3d 996 (3d Cir. 1994) ............................................................................. 10

*In re Baby Food Antitrust Litigation*,
    166 F.3d 112 (3d Cir. 1999) ........................................................................... 10

*Franks v. Delaware*,
    438 U.S. 154 (1978) ........................................................................... 2, 12, 16

*Hirst v. Inverness Hotel Corp.*,
    544 F.3d 221 (3d Cir. 2008) ............................................................................. 7

*Illinois v. Gates*,
    462 U.S. 213 (1983) ........................................................................................... 8

*Johnson v. United States*,
    333 U.S. 10 (1948) ........................................................................................... 11

*Jones v. United States*,
    362 U.S. 257 (1960) ........................................................................................... 7

*Rainsberger v. Benner*,
    913 F.3d 640 (7th Cir. 2019) ......................................................................... 11

*Sherwood v. Mulvihill*,
    113 F.3d 396 (3d Cir. 1997) ........................................................................... 12

*United States v. Bacon*,
    991 F.3d 835 (7th Cir. 2021) ........................................................................... 8

*United States v. Citizens & Southern Nat. Bank*,
    422 U.S. 86 (1975) ........................................................................................... 10

*United States v. Stearn*,
    597 F.3d 540 (3d Cir. 2010) ............................................................................. 8

*United States v. United States Gypsum Co.*,
    438 U.S. 422 (1978) ......................................................................................... 10

*United States v. Yousif*,
    308 F.3d 820 (8th Cir. 2002) ........................................................................... 2

*United States v. Yusuf*,
    461 F.3d 374 (3d Cir. 2006) .................................................................... *passim*

*Williamson v. United States*,
    512 U.S. 594 (1994) ........................................................................................ 8

*Wilson v. Russo*,
    212 F.3d 781 (3d Cir. 2000) ..................................................................... 1, 11, 12

*Wong Sun v. United States*,
    371 U.S. 471 (1963) ........................................................................................ 2

**Statutes**

15 U.S.C. § 1 .................................................................................................... 2, 4

18 U.S.C. § 1001 ............................................................................................... 2

## INTRODUCTION

Defendant Ara Aprahamian hereby moves to suppress evidence obtained from a search warrant executed at Taro Pharmaceuticals on September 8, 2016, or, in the alternative, for a *Franks* hearing. The government obtained the search warrant based on materially false and misleading information. In the affidavit filed in support of the warrant application, an FBI agent falsely stated ██████████████████████████████████████████████████████ ███████████████████████ She stated that ███████████████████████████ and she suggested that ██████████████████████████████████████████████ █████████████████████████ In fact, ███████████████████████████████ ████████████ The affiant knew ████████████████████████████████, yet she omitted that information, along with other exculpatory facts, from the application. ██ ███████████████████████████████████████████████████████████ ████████ which investigators would have known had they ██████████████████ ████████████ .

As the Third Circuit has held, a warrant application must contain a fair summary of all material facts, both exculpatory and inculpatory. An affiant may *not* "merely inform the magistrate or judge of inculpatory evidence." *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000). The affiant here did just that. She knowingly presented a misleading statement of probable cause, which led to the issuance of the warrant. Consequently, the evidence obtained—including physical evidence, documentary evidence, and statements—should be suppressed. At a minimum, a *Franks* hearing is required.

## LEGAL STANDARD UNDER *FRANKS*

Under the Fourth Amendment, a warrant may only issue upon a showing of probable cause. As the Supreme Court held in *Franks v. Delaware*, the Fourth Amendment requires that

the showing of probable cause be *truthful*, and that if it is not truthful, the resulting warrant is invalid. 438 U.S. 154, 164-65 (1978). To succeed in a *Franks* challenge, a defendant must establish: "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).

To receive a *Franks* hearing, a defendant need only make a "substantial preliminary showing" as to each factor. *Id*. (quoting *Franks*, 438 U.S. at 171). If, after the hearing, a defendant can demonstrate each factor by a preponderance, "the search warrant must be voided and the fruits of the search excluded." *Franks*, 438 U.S. at 156. Fruits include any "verbal statements" that derive from the "unlawful entry." *Wong Sun v. United States*, 371 U.S. 471, 485 (1963); *see United States v. Yousif*, 308 F.3d 820, 832 (8th Cir. 2002). Consequently, if a defendant makes statements to officers during the execution of an unlawful warrant, those statements must be suppressed.

## FACTUAL BACKGROUND

**A.     Warrant Application And Search of Taro's Headquarters**

Aprahamian, a former executive at Taro Pharmaceuticals, is charged with two criminal antitrust counts under the Sherman Act and one false statement count under 18 U.S.C. § 1001. The charges are based on allegations that he conspired with competitors to fix the prices of generic drugs and allocate customers between 2013 and 2015. ████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

███████████████████████████████████ the government sought a warrant ██████

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ The affidavit in support of the warrant was sworn by █████████████████ . The warrant application is attached to this motion as Exhibit A. In the affidavit, ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ The affidavit's statement of probable cause purported to be based primarily on ███████████████████████████████████████████ At the outset of the affidavit, ███████████████████████████

████████████████████████████████████████████████████ The affidavit then listed ████████████████████████████████████ ██████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████

The affidavit states that ████████████████████████████████████████

████████████████████████████████████████████████████████

The affidavit also describes ███████████████████████████

The next day, September 8, 2016, investigators executed the

warrant.  While they were at Taro's headquarters seizing physical evidence, including Aprahamian's computer, they also questioned him, and elicited statements that form the basis for the allegations in Count Three, the false statement count.  The government has disclosed the fruits of the search of Taro's office and presumably will seek to admit that evidence, as well as the statements, at trial.

## B.     Indictment And Pretrial Discovery

Over three years later, on February 4, 2020, the government indicted Aprahamian.

After the indictment was returned, the defense made repeated requests for pretrial discovery.  It requested, among other things, the basis for the warrant application and any *Brady/Giglio* information.  The government responded slowly, if at all.  On December 14, 2022—nearly three years after the indictment—the government sent a disclosure letter that included what appeared to be a ███████████████████████████████ ████████████████████████████ (Ex. B).  However, the government did not furnish any interview reports.  The defense made several follow-up requests for additional disclosure, including specifically any reports of interviews of ████████████████████ conducted prior to the search.  When the government failed to respond, the defense brought this issue to the Court's attention.  (Dkt. 57, 60).

Only after the defense raised this issue with the Court did the government finally send a letter, on June 22, 2023, which for the first time described the true basis—or lack thereof—for the September 2016 warrant.  (Ex. C).  It included ████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████.  That supplemental disclosure

letter makes clear, for reasons detailed below, that the warrant application contained knowing and reckless falsehoods.

**ARGUMENT**

## I. THE WARRANT APPLICATION CONTAINED FALSEHOODS AND MISLEADING OMISSIONS

The affidavit in support of probable cause for a warrant purported to describe █ ████████████████████████████████████████████████████████████████████

But the affidavit was grossly misleading in several ways. It falsely stated that █████████ █████████████████████████████. It omitted key exculpatory facts, including that ████████████████████████████████████████████████████████████████

And in reckless disregard for the truth, the government failed to conduct any additional follow-up investigation that would have revealed additional exculpatory information.

**A. The Affidavit Falsely Purported To Convey Information Based On** ████████ **████████████, And Falsely Reported That** ████████████ **████████**

As described above, the affidavit purports to be based largely on ████████████ █████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████

Any reader of the affidavit would naturally assume that █████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████

6



As part of the discovery process, the defense therefore requested any memoranda documenting interviews with ███████████████. Finally, on June 22, 2023, the government for the first time conceded that ██████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████ (Ex. C at 1).

That was a stunning disclosure. And it was an admission that the affidavit was materially misleading. Contrary to what the affidavit stated, when investigators sought a warrant, they ███ █████████████████████████████████████████████. Instead, the affidavit was apparently based on ████████████████████████████████████████████ ██████████████████████

The affidavit thus misrepresented the extent to which its allegations were filtered through layers of hearsay. As the Supreme Court has held, a warrant application may be based on hearsay—but only "so long as there [is] a substantial basis for crediting the hearsay." *Jones v. United States*, 362 U.S. 257, 272 (1960). When an affidavit relies on hearsay, especially

---

[1] The word "witness" ordinarily refers to a person who has firsthand knowledge of an event. *See* Fed. R. Evid. 602; *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 225 (3d Cir. 2008).

multiple layers of hearsay, additional scrutiny is required to ensure that the hearsay is reliable. A magistrate must assess "the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see United States v. Stearn*, 597 F.3d 540, 555 (3d Cir. 2010). But for the magistrate to perform that work, she must first be alerted that the affidavit is based on hearsay. Here, the affiant hid that fact from the magistrate.

Additionally, in assessing the veracity of one supplying hearsay, a magistrate must consider the source's motives. Cooperators, unlike neutral witnesses, "merit skepticism because they often have motives to lie such as payment, leniency, or animosity toward a rival." *United States v. Bacon*, 991 F.3d 835, 840 (7th Cir. 2021); *see Williamson v. United States*, 512 U.S. 594, 607-08 (1994). Here, the government had obtained its information ███████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ Under *Gates*, any magistrate reviewing the warrant application would have been *legally required* to consider those motives and to view the information with some skepticism. Yet the magistrate was unable to perform that legally required inquiry because the affiant falsely stated that ███████████████████ ████████████.

Finally, a magistrate considering a warrant application, especially one relying on layers of hearsay, would be required to consider whether the hearsay information is "reasonably corroborated by other matters within the officer's knowledge." *Gates*, 462 U.S. at 242. Here, the affidavit falsely suggests that ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ In fact, nothing corroborated the accounts of conversations between ███████████████████

8

████████████████████████████████████████████████████

███████

     The affidavit's claim to be based on ████████████████████████████

██████████████████

## B. The Warrant Application Intentionally Omitted Exculpatory Information Known To Investigators

████████████████████████████████████████ are bad enough—but it gets worse.

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

     First and foremost, ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████.

     In short, in its ████████████████████████████████

████████████████████████████████████████████████████



[REDACTED] omitted other exculpatory information as well.  For example, the affidavit identifies a [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] But the government failed to include [REDACTED]

[REDACTED]

In another example, the affidavit colorfully describes [REDACTED]

[REDACTED] This was a critical part of the warrant application because it implied that, [REDACTED]

[REDACTED]

[REDACTED] More

---

[2] Merely discussing pricing and market information with competitors does not violate antitrust law unless there is an agreement to fix prices.  The Third Circuit has explained:  "We have held previously that communications between competitors do not permit an inference of an agreement to fix prices unless 'those communications rise to the level of an agreement, tacit or otherwise.'" *In re Baby Food Antitrust Litigation*, 166 F.3d 112, 126 (3d Cir. 1999) (quoting *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 999 (3d Cir. 1994)); *accord United States v. United States Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978); *United States v. Citizens & Southern Nat. Bank*, 422 U.S. 86, 113 (1975).

generally, with respect to 

In other words, the government *knew* that some of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Yet the warrant application failed to include any such caveat. Again and again, the warrant application presented misleading accounts by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Investigators may not withhold materially exculpatory information from a warrant application. *Wilson*, 212 F.3d at 787; *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019). While a warrant application need not include every detail known to investigators, it must include a fair summary of evidence—both inculpatory and exculpatory—so that a neutral and detached magistrate may make a fair determination whether probable cause exists. *See Johnson v. United States*, 333 U.S. 10, 13-14 (1948). For that reason, "a police officer cannot make unilateral decisions about the materiality of information, or … merely inform the magistrate or judge of inculpatory evidence." *Wilson*, 212 F.3d at 787.

That is precisely what happened here. The warrant application excluded significant exculpatory information known to the government▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ These omissions were not accidental.

### C. Any Reasonably Diligent Investigation Would Have Revealed Additional Information Contradicting The Probable Cause Statement

Alternatively, the first prong of the *Franks* test is satisfied even where the government acted with a "reckless disregard for the truth." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir.

1997) (citing *Franks*, 438 U.S. at 171-72). "[W]hen an officer has obvious reasons to doubt the truth of what he or she is asserting," those doubts must be set forth in the application, or the officer must conduct additional investigation to satisfy those doubts. *Wilson*, 212 F.3d at 783; *accord Yusuf*, 461 F.3d at 385. Here, the government knew, based on █████████████████ ██████████████████████████████████████████████████████████████████████████ ████████ Yet the government failed to conduct additional investigation before seeking the warrant.

The government knew ██████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

████████ The government *knew* the only way to get a full and accurate account ████████████ ██████████████████████████████████████████████████████████ █████████████████████████ In so doing, it acted in reckless disregard for the truth.

If the government had taken the obvious and customary step of ████████████████████ ██████████████████████████████ it would have uncovered additional exculpatory information. Indeed, the government's own ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████[3] When the government did finally ████████████████████████████████████████

---

[3] The interview reports of ████████████████████ are attached as Exhibits D and E to this motion.

In other words, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ there was no agreement (or even common understanding) to fix prices ▮▮▮▮▮▮▮▮▮▮

[REDACTED]

[REDACTED] [4]

    All of this would have been known to investigators if they had only asked.  A reasonably diligent investigation would have revealed that [REDACTED]

[REDACTED] In addition to the intentionally misleading statements and omissions described above, the government also acted in reckless disregard for the truth.

## II. THE FALSEHOODS IN THE WARRANT APPLICATION WERE MATERIAL TO THE ISSUANCE OF THE WARRANT

    As the foregoing makes clear, the first factor of the *Franks* suppression test is satisfied—namely, "the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant." *Yusuf*, 461 F.3d at 383.  The second factor, materiality, requires the court to excise the false statements from the affidavit and to remove the falsehood created by omissions.  *Id*. at 383-84.  In other words, a court must determine whether the warrant would have issued but for the falsehoods and omissions in the affidavit.  The answer here is no.

    For starters, the warrant application here was relatively sparse.  The facts supporting probable cause [REDACTED]

---

[4] In addition, both [REDACTED] have been deposed in the parallel civil MDL case. *See In re Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 16-MD-2724-CMR (E.D. Pa.).  Those depositions, which are currently the subject of a protective order entered in the MDL, provide additional detailed accounts of their conversations and meetings with Aprahamian.  The deposition testimony provides further evidentiary support that, in seeking the warrant, the government acted in reckless disregard for the truth.  Aprahamian has moved in the civil cases for a modification of the protective order so that he can use civil discovery, including the deposition testimony, in his defense in this case.  *See id*., Dkt. 2511.  If and when that request is granted, he will supplement this submission.

████████████████████████████. As a matter of common sense, any magistrate would have wanted to know the truth—for example, that ██████████████████████████ ████████████████████████████████████████████████████████ ███████

     The information the government actually possessed was insufficient to establish probable cause. A truthful and honest statement of facts known to the government at the time of the application would have resembled the following:

(a)



Those facts are different from the facts presented to the magistrate. Those facts do not establish probable cause to believe that Taro or Aprahamian violated the Sherman Act. Those facts would not have supported the issuance of a warrant to search Taro's headquarters.

     Moreover, if the government had undertaken a reasonable investigation and ████████ ████████████████████████████████████, it would have uncovered additional

exculpatory information—which it then would have been required to disclose in its warrant application.  In the absence of the government's falsehoods—knowing misstatements, knowing and reckless omissions—the warrant would not have issued.  The falsehoods were material, and the second factor is therefore satisfied.

## III.  SUPPRESSION IS REQUIRED, OR IN THE ALTERNATIVE, A *FRANKS* HEARING IS WARRANTED

Aprahamian submits, based on the foregoing, that both factors required to suppress the fruits of a warrant are established by a preponderance of the evidence.  This showing is not based on mere speculation or "conclusory allegations."  *Yusuf*, 461 F.3d at 383 n.8 (quoting *Franks*, 438 U.S. at 171).  It is based on the government's own disclosures.  In particular, the June 22, 2023 supplemental disclosure letter provided by the government establishes by a preponderance that the warrant application was materially misleading.

At a minimum, Aprahamian has plainly made the "substantial preliminary showing" required to justify a *Franks* hearing.  At that hearing, Aprahamian would submit additional evidence in support of this motion to suppress, including materials from discovery in the civil MDL case if his application to modify the protective order is granted so that he can present them here.  Aprahamian should also have the opportunity to question ███████████ , and any government attorney or agent who helped draft the warrant application, the government's December 2022 disclosure letter, or the government's June 2023 supplemental disclosure letter.  Their testimony would be relevant, among other reasons, in assessing any claims of good-faith mistake.

Finally, in advance of the *Franks* hearing, Aprahamian requests that this Court order the government to disclose any other evidence relevant to the disposition of this motion and to the credibility of the witnesses.  This includes all notes and accounts of all communications with

██████████████████████████████████████, as well as any other *Brady/Giglio*

information tending to undermine the warrant application, including the credibility of its agents.

## CONCLUSION

For the foregoing reasons, Aprahamian requests that this Court either order suppression

of the fruits of the illegal warrant or schedule a *Franks* hearing at its earliest possible

convenience and order the production of relevant discovery.


Dated:  August 22, 2023
     New York, New York               Respectfully submitted,

                                     /s/ Alexandra A.E. Shapiro

G. Robert Gage, Jr.                       Alexandra A.E. Shapiro

Gage Spencer & Fleming LLP         Fabien M. Thayamballi

410 Park Avenue, Suite 900         Shapiro Arato Bach LLP

New York, NY 10022               1140 Avenue of the Americas, 17th Floor

(212) 768-4900                   New York, New York 10036

grgage@gagespencer.com           (212) 257-4880

                                     ashapiro@shapiroarato.com

Caroline Goldner Cinquanto        fthayamballi@shapiroarato.com

Two Greenwood Square

3331 Street Road, Suite 450

Bensalem, PA 19020

(215) 910-2732

carrie@cgclegal.com


                                     *Attorneys for Defendant Ara Aprahamian*