## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | **CRIMINAL NO. 2:20-CR-00064-RBS** |
| **ARA APRAHAMIAN,** | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF TEVA PHARMACEUTICALS USA, INC.'S MOTION TO INTERVENE

**Table of Contents**

Page

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND & PROCEDURAL HISTORY ........................................................... 2

    A. Aprahamian Indictment ........................................................................................... 2

    B. Teva Indictment and Deferred Prosecution Agreement ........................................... 3

    C. Aprahamian Dismissal ............................................................................................. 4

III. LEGAL ARGUMENT .................................................................................................... 4

    A. Teva Should Be Permitted to Intervene in This Matter ........................................... 4

        1. Teva Is Permitted to Intervene Pursuant to FRCP 24(b) ................................... 4

        2. Teva Is Also Permitted to Intervene Because Its Constitutional Rights Are Implicated by the Motion to Seal ....................................................................... 6

    B. The Court Should Deny the Government's Motion to Seal .................................... 7

        1. Sealing the Letter Is Against Public Interest, Local Practice, and DOJ Policy ...... 8

        2. Sealing the Letter Contravenes Government Policy ........................................ 10

        3. The Deliberative Process Privilege Is Not a Legitimate Basis to Seal the Dismissal Letter ................................................................................................ 11

        4. Teva Has a Unique Interest in the Information Contained in the Letter. ........ 12

IV. CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brady v. Maryland*,
   373 U.S. 83 (1963) ......................................................................................................... 5, 6

*Giglio v. United States*,
   405 U.S. 150 (1972) ........................................................................................................... 5

*In re Cendant Corp.*,
   260 F.3d 183 (3d Cir. 2001) .............................................................................................. 6

*In re Generic Pharms. Pricing Antitrust Litig.*,
   No. 2:16-MDL-2724 (E.D. Pa) .......................................................................................... 5

*In re Richards*,
   213 F.3d 773 (3d Cir. 2000) .............................................................................................. 7

*McCann v. Mangialardi*,
   337 F.3d 782 (7th Cir. 2003) ............................................................................................. 6

*Northrop Corp. v. McDonnell Douglas Corp.*,
   751 F.2d 395 (D.C. Cir. 1984) ........................................................................................ 10

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.*,
   141 S. Ct. 777 (2021) ...................................................................................................... 10

*United States v. Bortnovsky*,
   No. 1:22-cr-10006-WGY (Dec. 5, 2022) ........................................................................... 9

*United States v. Brown*,
   250 F.3d 811 (3d Cir. 2001) ......................................................................................... 5, 6

*United States v. Fishoff*,
   No. 15-586 (MAS), 2016 U.S. Dist. LEXIS 108301 (D.N.J. Aug. 16, 2016) .................... 5

*United States v. Galloway*,
   No. 2012-020, 2013 U.S. Dist. LEXIS 124279 (D.V.I. Aug. 30, 2013) ............................ 7

*United States v. Hirsh*,
   No. 03-58, 2007 U.S. Dist. LEXIS 45485 (E.D. Pa. June 22, 2007) ............................. 4, 5

*United States v. Mastronardo*,
   No. 12-cr-388-16, 2015 U.S. Dist. LEXIS 78917 (E.D. Pa. June 17, 2015) ..................... 8

*United States v. Nerayoff*,
    No. 20-CR-008 (MKB),
    2023 U.S. Dist. LEXIS 79058 (E.D.N.Y. May 5, 2023) ............................................................9

*United States v. Ohiri*,
    133 F. App'x 555 (10th Cir. 2005) ........................................................................................6

*Unites States v. Overton*,
    24 F.4th 870 (2d Cir. 2022) ...................................................................................................6

*United States v. Padilla-Palomar*,
    No. 2-11-cr-538-BMS (E.D. Pa. Apr. 10, 2023)....................................................................8

*United States v. Pagan*,
    735 Fed. Appx. 48 (3d Cir. 2018).......................................................................................6, 7

*United States v. Smith*,
    123 F.3d 140 (3d Cir. 1997*)*..................................................................................................6

*United States v. Smith*,
    776 F.2d 1104 (3d Cir. 1985)..................................................................................................6

*United States v. Staton,*
    No 5:10-cr-00367-NIQA (E.D. Pa. Aug. 18, 2022)...............................................................10

*United States v. Teva Pharmaceuticals, Inc., USA*,
    No. 2:20-cr-00200-RBS (E.D. Pa) ................................................................................2, 3, 4

**Rules**

Fed. R. Civ. P. 24(b) ........................................................................................................................4

Fed. R. Crim. P. 48(a) .....................................................................................................................7

**Constitutional Provisions**

U.S. Const. amend. I ..................................................................................................................6, 10

**I.     INTRODUCTION**

Teva Pharmaceuticals USA, Inc. ("Teva") respectfully submits this Memorandum of Law in Support of its Motion to Intervene for the limited purpose of opposing the government's motion to seal the letter to the Court dated Nov. 27, 2023 (the "Motion") or in the alternative granting Teva access to the Dismissal Letter [ECF No. 97] so that the public—and Teva—can understand the basis for the Justice Department's extraordinary request that the indictment against Ara Aprahamian be dismissed.[1]

Despite its repeated assertions that the public has a strong interest in the prosecution of collusive conduct relating to generic drug prices, the government now seeks to conceal from the public the rationale for its decision not to prosecute that same conduct by impounding a letter to this Court that details the government's rationale for dismissal (the "Dismissal Letter" or the "Letter"), ECF No. 97.  The government's position is confounding, and it deviates greatly from the accepted practice in the Eastern District of Pennsylvania, where prosecutors routinely state publicly the reasoning behind their decisions to abandon prosecutions.

The sole reason the government has provided for sealing the Dismissal Letter—protection of its deliberative process—is specious on its face.  Put simply, the government has no basis to invoke the deliberative process privilege.  Because the letter postdates the decision to dismiss the charges, the letter, by definition, cannot contain predecisional information that is subject to the deliberative process privilege.  Instead, the Dismissal Letter is comprised of

---

[1] The Court granted the government's request for dismissal on November 29, 2023.  ECF No. 98. While Teva was preparing to file this motion as an opposition to the government's motion to seal, the Court granted the government's motion to seal.  ECF No. 100.  Accordingly, Teva respectfully requests that the Court reopen that decision and consider this motion to intervene to oppose the government's motion to seal, or in the alternative, consider this as a motion to intervene to grant Teva access to the government's Dismissal Letter.

information that was used to inform the government's final decision, which may be sensitive or even embarrassing, but is not protected from disclosure.

For the reasons set forth below, the Court should grant this Motion to intervene for this limited purpose and deny the government's Motion to Seal the Dismissal Letter.

## II. BACKGROUND & PROCEDURAL HISTORY

### A. Aprahamian Indictment

On February 4, 2020, a Grand Jury returned a three-count indictment against Aprahamian (the "Aprahamian Indictment"), who served as a senior executive of Taro Pharmaceuticals U.S.A., Inc. ("Taro"). ECF No. 1. In conjunction with the filing of that indictment, the government released a press release stating:

> Today's charges demonstrate the Antitrust Division's resolve in rooting out collusion that corrupted the marketplace for generic drugs and led to higher prices for critical medications used by millions of Americans," said Assistant Attorney General Makan Delrahim of the Department of Justice's Antitrust Division. "Along with our law enforcement partners, the Division will ensure that executives who cheat consumers are not immune from our antitrust laws, and that those who seek to impede or obstruct our investigations are prosecuted to the full extent of the law.

*See Generic Drug Executive Indicted on Antitrust and False Statement Charges*, OFFICE OF PUBLIC AFFAIRS, U.S. DEP'T OF JUSTICE (Feb. 4, 2020), https://www.justice.gov/opa/pr/generic-drug-executive-indicted-antitrust-and-false-statement-charges. Counts One and Two of the indictment allege separate conspiracies with different drug manufacturers and their respective employees to fix generic drug prices by sharing non-public competitive information about impending price increases. *Id.* at ¶¶ 10-29; 33-41.[2] The allegations in Count One relate to Teva.

---

[2] Teva's identity was eventually revealed through public reporting on this and other price-fixing indictments. *See*, *e.g.*, *Seventh Generic Drug Manufacturer Is Charged in Ongoing Criminal Antitrust Investigation*, OFFICE OF PUBLIC AFFAIRS, U.S. DEP'T OF JUSTICE (Aug. 25, 2020), https://www.justice.gov/opa/pr/seventh-generic-drug-manufacturer-charged-ongoing-criminal-antitrust-investigation.

Count Three charged Aprahamian with "ma[king] materially false, fictitious, and fraudulent statements and representations, to wit, in connection with an investigation."  *Id.* at ¶ 46.

### B.     Teva Indictment and Deferred Prosecution Agreement

Approximately six months after the Aprahamian Indictment, on August 25, 2020, a Grand Jury returned a three-count Second Superseding Indictment (the "SSI") against Teva. *United States v. Teva Pharmaceuticals, Inc., USA*, No. 2:20-cr-00200-RBS (E.D. Pa) ("*Teva*"), ECF No. 28.  Similar to the Aprahamian indictment, Count Two of the SSI alleged that Teva conspired with Taro through Aprahamian.  *Id.* at ¶¶ 33-41.  Count One charged Teva with conspiring with Glenmark Pharmaceuticals Inc., USA and Apotex Corp. to increase and maintain prices of pravastatin and other generic drugs.  *Id.* at ¶¶ 10-28.  Count Three charged Teva with conspiring with Sandoz Inc. to increase and maintain prices of tobramycin and other generic drugs.  *Id.* at ¶¶ 45-54.

On August 21, 2023, Teva and the United States Department of Justice, Antitrust Division entered into a Deferred Prosecution Agreement (the "DPA") in which the government agreed to defer prosecution of Teva pursuant to the terms and conditions described in the DPA. *Teva* ECF No. 186.  Importantly for the purposes of this Motion, the Statement of Facts references an agreement between Aprahamian and a Teva employee not to submit a bid to a wholesale drug distributor on clotrimazole, with the purpose of increasing and maintaining the price of that drug.  *Id.*, Attachment A ¶ D.

On September 13, 2023, following the execution of the DPA, this Court entered an order vacating the trial date and deferring the prosecution and trial against Teva of the charges in the SSI.  *Teva* ECF No. 190.

### C. Aprahamian Dismissal

On November 16, 2023, the government filed an unopposed motion to dismiss the indictment against Aprahamian. ECF No. 95. The motion did not explain why the government sought to dismiss the Aprahamian Indictment. *Id.* Without an order from the Court, the government subsequently filed *under seal* the Dismissal Letter, presumably explaining the government's rationale for seeking dismissal. ECF No. 97. On November 27, 2023, the government filed a Motion to Impound the Dismissal Letter (the "Motion to Seal"), ECF No. 96, claiming that the Letter, "if made public, would jeopardize the United States' right and ability to protect its deliberative process in criminal cases." *Id.* at ¶ 1. The government further claims that "[t]he Letter discloses privileged information about the United States' deliberative process related to [Aprahamian's] prosecution." *Id.* at ¶ 3. On November 29, 2023, the Court entered an order dismissing the indictment against Aprahamian. ECF No. 98. The Motion to Seal is still pending. The government has provided no public rationale for why it sought dismissal of the Aprahamian Indictment.

### III. LEGAL ARGUMENT

#### A. Teva Should Be Permitted to Intervene in This Matter

Though Teva is not a party to *this* criminal case, it was indicted for conduct that overlaps with the conduct charged in the Aprahamian Indictment—that is, participation in a conspiracy with Taro, Aprahamian's employer, to fix the prices of certain generic drugs. Accordingly, it has two independent bases to intervene in this matter: (1) Federal Rule of Civil Procedure 24(b), and (2) pursuant to its constitutional rights of access and due process.

##### 1. Teva Is Permitted to Intervene Pursuant to FRCP 24(b)

Under Federal Rule of Civil Procedure 24(b)(1)(B), a court may permit a third party to intervene in an action, upon a timely motion, when the movant "has a claim or defense that

4

shares with the main action a common question of law or fact." This Court has previously relied upon Rule 24(b) to find that third parties have standing to intervene in criminal matters. *See United States v. Hirsh*, No. 03-58, 2007 U.S. Dist. LEXIS 45485, at *1 n.1 (E.D. Pa. June 22, 2007). In *Hirsh*, Judge Robreno ruled that the plaintiff in a pending civil case had standing to intervene for the limited purpose of unsealing certain records in a related criminal proceeding. *Id.* The court reasoned that "[the plaintiff] ha[d] standing to intervene because the documents at issue in th[e] criminal case ha[d] a question of . . . fact in common with [the plaintiff]'s claim in the civil case." *Id.* (citing Fed. R. Civ. P. 24(b)(2)) (internal quotations omitted).

Here, Teva has two grounds for intervention under Rule 24. First, as described above, Teva was indicted for conduct that overlaps with the charges in the Aprahamian Indictment. *See Teva* ECF No. 28. Second, as a defendant in the multi-district litigation pending in the Eastern District of Pennsylvania in which plaintiffs claim they suffered billions of dollars in harm,[3] Teva has defenses that share many common questions of law and fact with this criminal proceeding. Put simply, the allegations of allocating customers and fixing prices for generic drugs sold in the United States in this criminal proceeding directly relate to the same allegations against Teva in the multi-district litigation. In fact, the government has conceded this very point. *See* MDL ECF No. 107, at 3. (government moving to intervene in the multi-district litigation, arguing that "[t]his civil litigation shares common questions of law and fact with the Antitrust Division's investigation into the generic pharmaceutical industry"). The same reasoning in *Hirsh* supports Teva's Motion to intervene here.

---

[3] *In re Generic Pharms. Pricing Antitrust Litig.*, No. 2:16-MDL-2724 (E.D. Pa) (the "MDL").

### 2. Teva Is Also Permitted to Intervene Because Its Constitutional Rights Are Implicated by the Motion to Seal

Courts in the Third Circuit have also granted motions to intervene in criminal proceedings where "a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case." *See, e.g.*, *United States v. Fishoff*, No. 15-586 (MAS), 2016 U.S. Dist. LEXIS 108301, at *4 (D.N.J. Aug. 16, 2016) (internal quotations omitted) (granting motion to intervene where third party sought to prevent grant of a motion confirming a waiver of privilege).

Teva is permitted to intervene here in order to vindicate its due process rights as well as its constitutional rights to access. First, as a defendant in a criminal case, Teva has a right to know the evidence against it, including additional due process rights to exculpatory information pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). *See*, *e.g.*, *United States v. Brown*, 250 F.3d 811, 816 n.1 (3d Cir. 2001) (acknowledging that "*Brady* may require the government to turn over exculpatory information prior to entry of a guilty plea"); *see also United States v. Overton*, 24 F.4th 870, 878 (2d Cir. 2022) (holding that a *Brady* violation can be established by a showing that the government failed to produce exculpatory evidence prior to a guilty plea and that the evidence was material); *United States v. Ohiri*, 133 F. App'x 555, 562 (10th Cir. 2005) (holding that the government is required to disclose all known exculpatory evidence prior to a plea agreement); *McCann v. Mangialardi*, 337 F.3d 782, 787 (7th Cir. 2003) (suggesting that exculpatory disclosures under *Brady* are required prior to the entry of a guilty plea).

It is highly likely that the Dismissal Letter contains facts or conclusions about Aprahamian's conduct or the conduct of other key witnesses, as well as whether the government had sufficient evidence to convict Aprahamian of a crime. Given that both the SSI and DPA also

6

reference Aprahamian's conduct at length, Teva has a compelling interest in knowing whether any issues relating to sufficiency or witness credibility would impact the company's defenses.

Separately, Teva, like any third party, is permitted to intervene pursuant to its First Amendment right of access to judicial records in criminal proceedings, which is firmly established in this Circuit. *See United States v. Smith*, 776 F.2d 1104, 1112-13 (3d Cir. 1985); *In re Cendant Corp.*, 260 F.3d 183, 192, 198 n.13 (3d Cir. 2001). The Dismissal Letter is precisely the sort of record that falls within the First Amendment right of access. *See United States v. Smith*, 123 F.3d 140, 146 (3d Cir. 1997*)* (noting that the Third Circuit has extended the First Amendment right of access beyond criminal trials "to additional aspects of criminal proceedings . . . and to the records and briefs that are associated with those proceedings"). Teva, therefore, should be given a meaningful opportunity in this matter to explore the government's justification for sealing the Dismissal Letter given the public's right to view judicial records, which, in this Circuit, is "generally quite broad." *See United States v. Pagan*, 735 Fed. Appx. 48, 50 (3d Cir. 2018) (remanding motion to unseal to district court "to explain whether the documents should remain unsealed").

**B.     The Court Should Deny the Government's Motion to Seal**

Given the scope of the public's right to view judicial records, as well as the government's failure to articulate a reasonable basis to file such a record under seal without limitations, the Court should deny the government's Motion to Seal. This case—and its dismissal—is a matter of considerable public interest. Indeed, the Department of Justice Manual and local practice both undercut the government's attempt to file the Dismissal Letter under seal. The government's threadbare and vague arguments as to privilege do not support sealing the Dismissal Letter.

7

### 1. Sealing the Letter Is Against Public Interest, Local Practice, and DOJ Policy

Apart from the public's interest in (and right to) judicial records explained above, the public also has "a generalized interest in the processes through which prosecutors make decisions about whom to prosecute that a court can serve by inquiring into the reasons for a requested dismissal." *In re Richards*, 213 F.3d 773, 789 (3d Cir. 2000). Further to this interest, Federal Rule of Criminal Procedure 48(a) requires the government to seek leave of the Court before dismissing any indictment, information, or complaint. Indeed, Rule 48(a) functions as a "'sunshine' provision that increases accountability by requiring the government to articulate the reasons for its prosecutorial decisions. By inquiring into the government's reasons for dismissal, courts can ensure that judicial processes are not being abused." *United States v. Galloway*, No. 2012-020, 2013 U.S. Dist. LEXIS 124279, at *4-5 (D.V.I. Aug. 30, 2013) (citing *Richards,* 213 F.3d at 788).

To that end, and as the Court is well aware, in the Eastern District of Pennsylvania, the government routinely states on the record why it seeks to dismiss an indictment pursuant to Federal Rule of Criminal Procedure 48(a). *See, e.g.*, *United States v. Staton*, No 5:10-cr-00367-NIQA (ECF No. 455 ¶ 5) (E.D. Pa. Aug. 18, 2022) (noting that the government's request to dismiss the indictment came "[a]fter a review of the evidence in police custody[] and research into the legal status of the prosecution"); *United States v. Padilla-Palomar*, No. 2-11-cr-538-BMS (ECF No. 34 ¶¶ 1, 3) (E.D. Pa. Apr. 10, 2023) (reporting that the government's request for a dismissal of the indictment came after "agents were unable to locate [the defendant] in the United States," and after a "review[] [of] the available evidence . . . [whereby] such evidence no longer support[ed] prosecution of the defendant"); *United States v. Mastronardo*, No. 12-cr-388-16, 2015 U.S. Dist. LEXIS 78917, at *4-5 (E.D. Pa. June 17, 2015) (noting the government's

8

conclusion that the indictment should be dismissed because, among other things, the government determined that defendant was "the least culpable of the three defendants charged with [the same crime]"). As shown here, the government routinely provides the public with a clear rationale for dismissal.

Providing the public an explanation for the dismissal is also required by Department of Justice policy. The Justice Department's own guidelines require a full explanation of the reasons for dismissing an indictment in cases of considerable public interest, such as this. *See Dep't of Justice Manual* 9-2.050 ("In moving for leave to dismiss, the local practice should be followed. ***However, in cases of considerable public interest or importance where dismissal of the entire indictment or information is sought because of an inability to establish a* prima facie *case, a written motion for leave to dismiss should be filed explaining fully the reason for the request.***" (emphasis added)).

Here, however, the government sought to dismiss the indictment without any public explanation. The government's unopposed motion to dismiss, ECF No. 95, states only that "[d]ismissal of this case is not contrary to manifest public interest, and will allow the conservation of this Court's time and resources." This explanation is out of step with the practice in this District,[4] and the glaring lack of a public explanation takes on greater significance

---

[4] To be clear, disclosure of the reasons for dismissal are practiced throughout the country, and the government's explanation here would be inadequate in any District. *See. e.g., United States v. Nerayoff*, No. 20-CR-008 (MKB), 2023 U.S. Dist. LEXIS 79058, at *19 (E.D.N.Y. May 5, 2023) (government's explanation for dismissal included "material exculpatory evidence that it obtained well after return of the Indictment" and an "inability to admit other evidence at trial . . . essential to proving its case-in-chief"); *United States v. Bortnovsky*, No. 1:22-cr-10006-WGY (ECF No. 88 ¶ 8) (D. Mass. Dec. 5, 2022) (reflecting government's decision to dismiss indictment "[i]n light of [a witness]'s unexpected withdrawal from cooperation and his decision not to testify against one of the defendants").

9

given the government's prior public statements about these prosecutions and the public's interest in this litigation and other related cases.

### 2. Sealing the Letter Contravenes Government Policy

It is undisputed that there is considerable public interest in this and other generic drug price-fixing cases. Just over a month ago, the government asserted in the MDL that "the public has a strong interest in the United States' prosecution of collusive conduct that affected the marketplace for generic drugs and led to higher prices for critical medications used by millions of Americans." MDL ECF No. 2688 at 7. And in August 2023, upon Teva's execution of the DPA, the Justice Department issued a press release noting, among other things, that it was "hold[ing] two more pharmaceutical companies accountable for raising prices of essential medicines and depriving Americans of affordable access to prescription drugs."[5]

As these statements make plain, the reasoning behind the government's decision not to prosecute Aprahamian's alleged conduct—the same type of conduct referenced in the statements themselves—is unquestionably relevant to the public. For reasons that can only be imagined, the government has taken the opposite view here, and seeks to provide as little information as possible about the circumstances regarding dismissal despite the Department of Justice Manual's clear guidance to the contrary. The government's failure to comply with its own policies regarding disclosure and transparency on issues of public importance only bolsters Teva's argument that sealing the basis for dismissing the indictment is entirely inappropriate.

---

[5] *Major Generic Drug Companies to Pay Over Quarter of a Billion Dollars to Resolve Price-Fixing Charges and Divest Key Drug at the Center of Their Conspiracy*, OFFICE OF PUBLIC AFFAIRS, U.S. DEP'T OF JUSTICE (Aug. 21, 2023), https://www.justice.gov/opa/pr/major-generic-drug-companies-pay-over-quarter-billion-dollars-resolve-price-fixing-charges.

### 3. The Deliberative Process Privilege Is Not a Legitimate Basis to Seal the Dismissal Letter

Teva cannot fully assess the legitimacy of the government's deliberative process privilege claim because the government filed the Dismissal Letter under seal. But the government's argument is wrong on its face.

The deliberative process privilege generally "protects from disclosure documents generated during an agency's deliberations about a policy, as opposed to documents that embody or explain a policy that the agency adopts." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 783 (2021). Given that the Dismissal Letter undoubtedly "explain[s] a policy"—that is, the government's rationale for seeking dismissal of the Aprahamian Indictment—it is entirely unclear how the Letter could contain privileged material at all.

Critically, the deliberative process privilege does *not* protect "documents that embody or explain a policy that the agency adopts." *Id.* "The privilege therefore distinguishes between predecisional, deliberative documents, and documents reflecting a final agency decision and the reasons supporting it, which are not." *Id.* at 785.

The government's bare descriptions of the Dismissal Letter suggest that the Letter is comprised of information that, while potentially sensitive or embarrassing to the prosecution, merely embodies or explains the government's decision to dismiss the indictment. But even if the government had a legitimate claim of privilege, it may not simply state a claim baldly without offering more. *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 405 (D.C. Cir. 1984) ("The litigant's need for the information cannot be balanced against its sensitive and critical role in the government's decisionmaking [sic] process without any indication of what that information is. Any claim that the documents would be protected by this privilege is purely

11

speculative."). Because the government offers no credible basis for its claim of deliberative process privilege—nor could it—its Motion to Seal should be denied.

### 4. Teva Has a Unique Interest in the Information Contained in the Letter.

As explained above, Teva opposes the Motion to Seal because sealing the Dismissal Letter would violate Teva's First Amendment right to access the document, which it shares with the rest of the general public. However, as a defendant in a parallel criminal proceeding as well as in parallel civil proceedings, Teva has a substantial interest in the information detailed in the Letter, particularly to the extent that the Letter contains or otherwise references exculpatory evidence in the government's possession. As noted above, Teva is entitled to all exculpatory information in the government's possession.

## IV. CONCLUSION

For the reasons set forth above, Teva's Motion to Intervene should be granted and the government's Motion to Seal should be denied, or in the alternative Teva should be granted access to the government's Dismissal Letter.

Dated: December 1, 2023                         Respectfully submitted,

 */s/ David L. Axelrod*
R. Stephen Stigall (PA ID 78748)
David L. Axelrod (PA ID 323792)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 665-8500
sttigalls@ballardspahr.com
axelrodd@ballardspahr.com

*Attorneys for Defendant Teva Pharmaceuticals USA, Inc.*

**CERTIFICATE OF SERVICE**

I, David L. Axelrod, do hereby certify that I have served a true and correct copy of the foregoing document upon all counsel/parties by email on December 1, 2023.

*/s/ David L. Axelrod*
David L. Axelrod