IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 2:20-cr-00064-RBS |
| | : | |
| ARA APRAHAMIAN, | : | |
| Defendant. | | |

### UNITED STATES' RESPONSE IN OPPOSITION TO
### TEVA PHARMACEUTICALS USA, INC.'S MOTION TO INTERVENE

The United States opposes Teva Pharmaceuticals USA, Inc.'s Motion to Intervene in this case (ECF No. 102), which is disconnected from both the facts and the law. Teva's intervention is only appropriate for the limited purpose of raising its objection to the continued sealing of the letter filed at ECF No. 97 (the "Letter"). But the First Amendment right of access does not apply to the Letter, and the nature of the Letter requires continued sealing. Accordingly, this Court should deny Teva's motion to intervene.[1]

I.  PROCEDURAL BACKGROUND

On February 4, 2020, a grand jury sitting in this district indicted Ara Aprahamian, a former executive at Taro Pharmaceuticals U.S.A., Inc. ("Taro"), for two counts of conspiring to fix prices, rig bids, and allocate markets in the generic pharmaceutical industry in violation of the Sherman Act and one count of making a false statement to a federal agent. ECF No. 1. Count One of the Aprahamian indictment alleged a conspiracy between Aprahamian, executives at Sandoz, Inc. ("Sandoz"), and others. *Id*. Count

---

[1] Alternatively, the United States respectfully asks that this Court deny Teva's motion to reconsider—styled as a motion to intervene—because Teva has not shown "a clear error of law" or "manifest injustice" requiring the Court to reconsider its sealing order at ECF No. 100. *United States v. Dupree*, 617 F.3d 724, 733 (3d Cir. 2010) ("Such motions are granted for compelling reasons, such as a change in the law which reveals that an earlier ruling was erroneous, … motions to reconsider empower the court to change course when a mistake has been made, they do not empower litigants to raise their arguments, piece by piece.") (citing *Solis v. Current Dev. Corp.*, 557 F.3 772, 780 (7th Cir. 2009)) (cleaned up).

Two of the Aprahamian indictment alleged a conspiracy between Aprahamian, executives at Teva Pharmaceuticals USA, Inc. ("Teva"), and others. *Id*.

On August 25, 2020, the same grand jury issued an indictment against Teva for three counts of violating the Sherman Act. *United States v. Teva Pharmaceuticals USA, Inc. and Glenmark Pharmaceuticals Inc., USA*, 2:20-cr-000200-RBS(s), ECF No. 28. Count One of the Teva indictment alleged a conspiracy between executives at Teva, executives at Glenmark Pharmaceuticals USA, Inc. ("Glenmark"), and others. *Id*. Count Two of the Teva indictment alleged a conspiracy between executives at Teva, executives at Taro, and others. *Id*. And Count Three of the Teva indictment alleged a conspiracy between executives at Teva, executives at Sandoz, and others. *Id*.

Count Two of the Aprahamian indictment and Count Two of the Teva indictment charged the same conspiracy. But the conspiracies charged in Count One of the Aprahamian indictment and Counts One and Three of the Teva indictment were unique and not reflected in the Aprahamian indictment. And Count Three of the Aprahamian indictment was unique to the case against Aprahamian and not reflected in the Teva indictment.

Both criminal cases were heavily litigated by competent defense counsel. Meanwhile, dozens of private and state enforcers began actively litigating the related multi-district litigation, *In Re: Generic Pharmaceuticals Pricing Antitrust Litigation*, 2:16-md-02724, before Judge Cynthia M. Rufe in this district. Teva and Aprahamian are also named defendants in the MDL, along with dozens of other generic drug manufacturers and their executives. Judge Rufe lifted a stay on depositions in the MDL in 2022. As a result, many individuals involved in the conduct alleged in the criminal cases were or are scheduled to be deposed over the United States' objection. Teva and Aprahamian were permitted to participate in and obtain transcripts of the civil depositions.

Discovery in the two criminal cases was extensive. Over two hundred memoranda from meetings between the prosecution team and its anticipated witnesses were documented and produced to the criminal defendants. The United States also produced millions of records related to the charged conduct, and it provided lists of relevant materials to assist the defendants in their own trial preparation.

On August 21, 2023, the United States and Teva entered into a Deferred Prosecution Agreement ("DPA") resolving the charges against the company. 2:20-cr-00200-RBS(s), ECF No. 186. The Teva DPA includes admissions by the company that the charges against it in the criminal case were "true and accurate." *Id*. at 2. Following entry of the DPA, this Court vacated the trial date and scheduling order in the case against Teva. *Id*., ECF No. 190. The case remains pending, however, until the United States confirms Teva has fulfilled its obligations under the DPA or asks that the case be reset for trial. *Id*.

The United States filed an unopposed motion to dismiss this case against Aprahamian on November 16, 2023. ECF No. 95. In its motion, the United States explained that the dismissal was not contrary to manifest public interest and would allow conservation of the Court's time and resources. *Id*. Responding to an inquiry from the Court, the United States subsequently filed the Letter under seal. As explained in an attached motion to impound, the Letter disclosed privileged information about the United States' deliberative process related to this case. ECF No. 96. This Court granted the United States' motion to dismiss the case on November 29 and ordered the Letter remain sealed on December 1. ECF No. 98; ECF No. 100.

II.     ARGUMENT

A. Teva's Intervention Should be Limited to the Issue of Sealing

    1. Federal Rule of Civil Procedure 24(b) is Not Applicable to Criminal Cases

There is no rule allowing intervention in a criminal proceeding. Federal Rule of Civil Procedure 24(b) allows non-parties permissive leave to intervene in civil matters, but there is no corollary in the Federal Rules of Criminal Procedure. *See United States v. Nocito*, 2020 WL 4350241, at *4 (W.D. Pa. July 29, 2020) ("the intervenors may not intervene in this <u>criminal</u> case or obtain injunctive relief pursuant to Rules of <u>Civil</u> Procedure 24 and 65. This criminal case, … , is governed by the Federal Rules of <u>Criminal</u> Procedure") (emphasis in original); *In re Globe Newspaper Co*., 920 F.2d 88, 90 (1st Cir. 1990) ("the right of a non-party to intervene in a criminal proceeding is doubtful").

The Federal Rules of Criminal Procedure's omission of a general mechanism for third parties to intervene in a criminal prosecution was intentional. Criminal prosecutions have "special status" in our

3

legal system, and "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R.S. v. Richard D. and Texas*, 410 U.S. 614, 619, 93 S.Ct. 1146 (1973) (affirming decision to deny intervention by realtor in criminal prosecution). Intervention by third parties in criminal proceedings is the exception, not the rule. *United States v. Wegeler*, 941 F.3d 665 (3d Cir. 2019) (noting that movant "insists that she is the anomaly").

The contrast between intervention in the civil and criminal systems is rooted in the role intervention is intended to serve. Intervention under Federal Rule of Civil Procedure 24 was intended to "foster economy of judicial administration and to protect non-parties from having their interests adversely affected by litigation without their participation." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977). The rules governing federal criminal procedure are intended to "provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed. R. Crim. P. 2.

That is not to say there are no circumstances under which a third party may intervene in a criminal matter. *See, e.g., United States v. Wecht*, 537 F.3d 222 (3d Cir. 2008) (granting members of the press intervenor status and access to juror identities); *United States v. Smith*, 123 F.3d 140 (3d Cir. 1997) (granting members of the press intervenor status but denying motion to unseal sentencing documents); *United States v. RMI Co.*, 599 F.2d 1183 (3d Cir. 1979) (noting that third parties may intervene in criminal proceedings to assert privilege). But in all those cases, the Third Circuit found that the proposed intervenor's standing lay outside the Federal Rules of Civil Procedure. It has never found Fed. R. Civ. P. 24(b) to be the appropriate means to intervene in a criminal case.

Even if Fed. R. Civ. P. 24(b) was the appropriate mechanism for intervention in a criminal matter, general intervention by Teva under that rule would not be appropriate. Teva does not currently "share[] with the main action a common question of law or fact." R. 24(b). This matter has been dismissed. There are no further questions of law or fact in this action. *See Summit Academy v. Township of Summit*, 66 Fed.Appx. 417 (3d Cir. 2003) (unpublished) (affirming decision to deny intervention where "no action existed in which to intervene" because all claims between existing parties had already been resolved);

4

*Littlejohn v. BIC Corp.*, 851 F.2d 673, 677 n. 7 (3d Cir. 1988) (noting that "intervention [under Rule 24] is ancillary and subordinate to a main cause and whenever an action is terminated, for whatever reason, there no longer remains an action in which to intervene") (limited by *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 (3d Cir. 1994)); *United States v. Heffner*, 2008 WL 4773002, at *2 (W.D. Pa. Oct. 28, 2008) (denying third party's motion to intervene in a criminal case because "there is no authority permitting intervention in a closed case"). Accordingly, Teva should not be granted general intervenor status under Fed. R. Civ. Pro. 24(b).

### 2. This Court May Grant Teva Status as a Limited Intervenor

But Teva's claim to intervene does not necessarily fail because the company tried to shoehorn its arguments into the wrong procedural mechanism. Teva claims it is entitled to intervene (1) by its due process rights and (2) to assert the First Amendment right of access. And in the Third Circuit, third parties seeking to intervene for the limited purpose of objecting to sealing or confidentiality orders have been permitted to do so under certain circumstances. *See Pansy*, 23 F.3d 772 (contrasting the "strong nexus of fact or law" that is required when a third party seeks to intervene under Federal Rule of Civil Procedure 24 against the lower burden to intervene for the limited purpose of modifying a confidentiality order) (quoting *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992)).

As a preliminary matter, Teva's due process rights do not entitle it to intervene in this matter. ECF No. 102-2, pg. 6. The cases which Teva cites for the proposition that the United States must turn over the Letter to satisfy its *Brady* and *Giglio* obligations are not on point. Those cases all relate to entry of a guilty plea. Teva voluntarily chose to resolve the related criminal matter through a DPA, not a guilty plea. The rights and obligations conveyed by a DPA are different from the rights and obligations conveyed under a guilty plea. *See, e.g., United States v. Fokker Servs. B.V.*, 818 F.3d 733, 746 (D.C. Cir. 2016) (distinguishing between Rule 11 pleas and DPAs in part because the terms are written by the parties, not the court); *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 138 (2d Cir. 2017) (holding that a court's authority over a DPA is purely limited to assessing whether it is a "bona fide" opportunity for the

5

defendant to demonstrate good conduct); *United States v. Boeing Corp.*, 655 F.Supp.3d 519, 533 (N.D. Tex. 2023) (analyzing the judiciary's "extremely limited" involvement in DPAs generally).

Teva's due process rights similarly do not demand the disclosure of any conclusions reached by the United States about the Aprahamian case, anticipated trial witnesses, or the United States' likelihood of success at trial the Letter might include. Those types of conclusions are not discoverable under any posture. *See Rhone-Poulenc Rorer Inc. v. Home Indem Co.*, F.3d 851 (3d Cir. 1994) ("Facts are discoverable, the legal conclusions regarding those facts are not"). And under any metric, Teva's allegations that it has a "unique" and "substantial" interest in the Letter are irrelevant to this Court's analysis.[2] ECF 102-2 at 7.

But as a member of the public, Teva <u>does</u> have standing to intervene for the limited purpose of challenging this Court's order to seal the Letter under the right of access. *See Pansy*, 23 F.3d at 777 (holding that, to find standing to intervene to challenge sealing, the court must "only find that the Order … being challenged presents an obstacle to the [third party's] attempt to obtain access."); *United States v. Raffoul*, 826 F.2d 218, 225 (3d Cir. 1987) (noting that the court should give members of the public the opportunity to present their views before sealing proceedings).

  B. **Continued Sealing of the Letter is Appropriate and Necessary**

     1. **The First Amendment Right of Access Does Not Apply to the Letter**

Members of the public have the right to challenge decisions to restrict access to judicial proceedings and records under both the First Amendment and common law. *See Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653 (3d Cir. 1991) (collecting cases); *United States v. Wecht*, 484 F.3d 194 (distinguishing between the right of access rooted in common law and the similar, but not identical,

---

[2] These arguments would be relevant to the *Pansy* factors employed in the Third Circuit and elsewhere to analyze motions to enter or modify protective orders under Fed. R. Civ. Pro. 26(c) or Fed. R. Crim. Pro. 16(d)(1). *Pansy*, 23 F.3d 772. However, the *Pansy* factors are not relevant to a request to unseal a specific document under the First Amendment right of access and should not be considered. *In re Avandia Marketing, Sales Practices & Products Liability Litigation*, 924 F.3d 662 (3d Cir. 2019) (vacating district court order because court improperly considered *Pansy* factors rather than right of access standard when ruling on a motion to unseal).

First Amendment right of access). Even if Teva is permitted to intervene for the limited purpose of challenging the December 1, 2023 sealing order, that challenge would fail.

The First Amendment right of access does not attach to every document filed with the court; this right only grants the public access to those materials that satisfy the "experience and logic test." *Press-Enterprise Co. v. Superior Court of Calif. For Riverside Cty.*, 478 U.S. 1, 8, 106 S.Ct. 2735 (1986) ("*Press-Enterprise II*"); *see Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164 (3d Cir. 1986) (en banc) (reviewing history of First Amendment right of access and expanding application of the test beyond the context of trials). The experience and logic test requires the materials satisfy two prongs: Under the "experience" prong, the court looks at whether the document and the information contained therein have "historically been open to the press." *Press-Enterprise II*, 478 U.S. at 8. Under the "logic" prong, the court asks "whether public access plays a significant positive role in the functioning of the process in question." *Id*. Teva's arguments do not satisfy either prong of this test. Accordingly, the First Amendment right of access does not attach to the Letter or its contents.

### a. Prosecutor's Reasons for Declination Are Not Historically Public

The analysis for whether the First Amendment right of access attaches to a particular document first requires an objective look at "whether the particular type of government [document] had historically been open in our free society." *Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164, 1175 (3d Cir. 1986) (en banc). "The experience prong sets a relatively high bar" for the party requesting access because the inquiry is "wide-ranging" and takes an historic, expansive look well beyond the parties and facts directly before the court. *North Jersey Media Group, Inc. v. Ashcroft,* 308 F.3d 198, 212 (3d Cir. 2002). For example, the Third Circuit found that deportation hearings have been open to the public for decades, yet the "tradition of open deportation hearings is too recent and inconsistent to support a First Amendment right of access." *Id*. at 211.

Although Teva correctly notes that recent practice of the United States has been towards providing public insight into the decision to dismiss a criminal matter, that has not always been the case. It has "long been the rule in federal courts" that prosecutors can dismiss a case in their sole discretion

without providing public comment or explanation up until the empanelment of a jury. *In re Richards*, 213 F.3d 773, 482 (3d Cir. 2000). For example, the Supreme Court noted over 150 years ago:

> Public prosecutions, until they come before the court to which they are returnable, are within the exclusive direction of the district attorney, and even after they are entered in court, they are so far under his control that he may enter a nolle prosequi at any time before the jury is empaneled for the trial of the case, except in cases where it is otherwise provided in some act of Congress.

*Id*.; quoting *Confiscation Cases*, 74 U.S. 454, 457, 19 L.Ed. 196 (1868). *See also* 6 Orfield's Criminal Procedure Under the Federal Rules § 48:4 (noting that, in 1865, "after indictment found and until trial commenced, [the prosecutor's] authority may be said to be absolute. He can then abandon the prosecution at his pleasure… even without the consent of the court").

Federal Rule of Criminal Procedure 48(a) added an obligation for prosecutors to obtain leave from the court to dismiss a criminal action beginning in 1944, but it created no obligation for prosecutors to provide the court or the public with any details on their decision. This omission was intentional. In drafting Rule 48(a), the Advisory Committee originally included a requirement that prosecutors seeking to dismiss an indictment supply a list of reasons for their decision. 2 Madeleine Wilken & Nicholas Triffin, *Drafting History of the Federal Rules of Criminal Procedure* (1991). *See* Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court"?*, 73 Stan. L. Rev. Online 28 (2020) (walking through the history of voluntary dismissals by prosecutors, and the motivations behind Rule 48(a)'s leave requirement). The "statement of reasons" requirement made it to the final drafting stage before being dropped without comment by the Supreme Court in favor of the "leave of court" requirement. *Id*.

While Rule 48(a) offers the opportunity for courts to obtain insight into prosecutorial decisions, its primary purpose has never been to open a public forum into the prosecutors' motivations. "The principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, …, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, n. 15 (1977) (collecting cases). "But the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is clearly contrary to the public interest." *Id*.

The Supreme Court has consistently affirmed its decision not to require inquiry into or explanation of a prosecutor's motivations in dismissal. "Judicial supervision in this area" would "entail[] systemic costs." *Wayte v. United States*, 470 U.S. 598, 608, 105 S. Ct. 1524 (1985). It could "chill law enforcement," cause delay, and "impair the performance of a core executive constitutional function." *United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480 (1996). As a result, "the presumption of regularity" applies to "prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *Id*. at 464 (cleaned up).

In short, the motivations behind a prosecutor's decision to dismiss an indictment have historically not been provided to the public. Even the court's ability to dissect a prosecutor's motivations is a relatively modern creation. Accordingly, to the extent the Letter might explain the United States' decision to dismiss this case, the First Amendment right of access does not support Teva's motion for unsealing.

### b. Public Access Would Not Play a Positive Role in the Dismissal Process

The second prong of the "experience and logic test" asks whether public access to the material at issue would enhance the role of that material. Although the appeal of allowing public access whenever practicable is clear, public access to the United States' reasons for requesting dismissal of a prosecution would not enhance the functioning or role of the United States' request.

As noted by Teva, the United States' recent approach has occasionally included publicly disclosing the reasons to dismiss a criminal action. But granting the public access to that type of information as a matter of right would not help the functioning or role of the United States' decision-making process. It could harm subsequent meritorious prosecutions, reveal embarrassing or harmful information about cooperating witnesses and defendants, and discourage the United States from voluntarily dismissing cases. Many of these same reasons were raised in opposition to the ultimately-unadopted requirement in the draft of Rule 48(a) that the United States include "a statement of reasons" for any dismissal. George H. Dession, *The New Federal Rules of Criminal Procedure: II*, 56 Yale L.J. 197, 257 (1947).

As discussed above, individual members of the public have no "judicially cognizable interest in the prosecution or non-prosecution of another" absent some other basis for standing. *Linda R.S.*, 410 U.S. at 619. Although courts should consider the public interest in deciding whether to grant the United States leave to dismiss criminal matters under Rule 48(a), *Rinaldi*, 434 U.S. 22, public access as a matter of right into the United States' reasons for doing so would not play a positive role in the process. Accordingly, the First Amendment right of access does not attach to the Letter or the information contained therein.

### 2. Sealing the Letter is Necessary to Protect Sensitive and Privileged Information

Because the First Amendment right of access does not apply to the Letter, the United States need only show good cause for sealing. *Wecht*, 484 F.3d at 211. Even if the public's First Amendment right of access did attach to the Letter, that right is not absolute and would be overcome in this case. *See id.* at 234 (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819 (1984) (explaining that "even when such a right of access exists, it is merely presumptive and may be overcome if the District Court articulates specific facts that justify closure")). And as explained in the United States' Motion to Impound, ECF No. 96, continued sealing is appropriate because the Letter contains law enforcement sensitive and privileged information about the United States' deliberative process in this case.

The law enforcement sensitive information contained in the Letter would affect the United States' ability to secure cooperation in related matters and future investigations. As the Second Circuit has noted, an important factor weighing in favor of continued sealing is whether granting public access is likely to "adversely affect law enforcement interests or judicial performance. Officials with law enforcement responsibilities may be heavily reliant upon the voluntary cooperation of persons who may want or need confidentiality. If that confidentiality cannot be assured, cooperation will not be forthcoming." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).

To formally assert privilege over the Letter, the United States would need to file an affidavit claiming privilege from the head of the agency claiming the privilege (1) stating that he has personally reviewed the Letter, (2) providing a specific designation and description of the Letter, and (3) articulating precise and certain reasons for preserving the confidentiality of the document. *United States v. Reynolds*,

345 U.S. 1, 7, 73 S.Ct. 528, 532 (1953); *see United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980) (applying *Reynolds* standard to a claim of executive privilege). The First Amendment right of access does not apply to the Letter and the law enforcement sensitive nature of the Letter justifies its continued sealing. Therefore, a formal claim of privilege is unnecessary at this time. But if the Court finds both that the First Amendment right of access applies to the Letter and that the jeopardy unsealing would have on the United States' law enforcement function is insufficient grounds to justify continued sealing, the United States respectfully asks for leave of court to assert privilege.

### III.    CONCLUSION

Continued sealing of the Letter is necessary for all the reasons set forth above, and Teva has no right to access the Letter under the First Amendment or otherwise. Accordingly, the United States respectfully asks that this Court deny Teva's motion to intervene.

Respectfully submitted,

 /s/ Julia M. Maloney
Julia M. Maloney
Kristina Srica
Attorneys
U.S. Department of Justice
Antitrust Division
450 5th Street NW, Suite 11400
Washington, DC 20530
Tel: 202-704-8039

## CERTIFICATE OF SERVICE

      I, Julia M. Maloney, hereby certify that I caused a copy of the foregoing Response in Opposition to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system and notice of these filings will be sent to the parties by operation of the Court's electronic filing system.

DATE: December 15, 2023                                              /s/ Julia M. Maloney
                                                                                                           Julia M. Maloney
                                                                                                            Trial Attorney
                                                                                                             Antitrust Division

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CRIMINAL NO. 2:20-cr-00064-RBS |
| | : | |
| **ARA APRAHAMIAN,** | : | |
| Defendant. | | |

### ORDER

Upon review and consideration of Proposed Intervenor Teva Pharmaceuticals USA, Inc.'s Motion to Intervene (ECF No. 102) and the United States' Response in Opposition thereto (ECF No. 103), the Court finds that the United States has shown the Letter docketed at ECF No. 96 should remain under seal at this time because it contains sensitive information not subject to the First Amendment right of access under the "experience and logic" test articulated in *Press-Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 106 S.Ct. 2735 (1986). In addition, the proposed intervenor has failed to articulate a "compelling reason" for its request for consideration of the sealing order at ECF No. 100. *United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010).

Accordingly, IT IS HEREBY ORDERED that Proposed Intervenor Teva Pharmaceuticals USA, Inc.'s Motion to Intervene is DENIED.

DATED this _____ day of _____, 2023.

BY THE COURT:

_____
HONORABLE R. BARCLAY SURRICK
United States District Court Judge