IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION |
| | : | |
| ARA APRAHAMIAN | : | NO. 20-64 |
| | : | |

SURRICK, J.                                                                                              AUGUST 27, 2025

## MEMORANDUM

**I.      BACKGROUND**

On November 16, 2023, the Government filed a Consent Motion to Dismiss the Indictment in the above-captioned case. (ECF No. 95.)  The Court requested additional information regarding why the Government was seeking dismissal, and on November 27, 2023, the Government filed under seal a letter that elaborated on its reasoning. ("Dismissal Letter," ECF No. 97.)  Presently before the Court is Non-party Teva Pharmaceuticals USA, Inc.'s ("Teva's") Motion to Intervene for the limited purpose of seeking to unseal the Dismissal Letter. (ECF No. 102.)

Although the Government disputes that intervention is warranted under Federal Rule of Civil Procedure 24(b), neither party disputes that members of the public have the right under both the First Amendment and common law to challenge decisions to restrict access to judicial proceedings and records. *See, e.g.*, *United States v. Smith*, 776 F.2d 1104, 1107-10 (3d Cir. 1985) (discussing right of access under First Amendment and common law).  Teva, like any third party, is permitted to intervene pursuant to its common law and First Amendment rights of access to judicial records in criminal proceedings, which are firmly established in this Circuit. *See Smith*,

1

776 F.2d at 1112-13 (3d Cir. 1985); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994).[1]

## II. **LEGAL STANDARD**

The district court, pursuant to its general discretionary powers, has the power to unseal previously sealed documents. *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007).

Common law presumes the public has a right of access to judicial materials. In both criminal and civil cases, a common law right of access attaches "to judicial proceedings and records." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). The common law right of access "antedates the Constitution." *Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir. 1986) (explaining the right of access promotes informed discussion of governmental affairs by providing the public with a more complete understanding of the judicial system"); *see also Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988). Public observation facilitated by the right of access "diminishes possibilities for injustice, incompetence, perjury, and fraud." *Littlejohn*, 851 F.2d at 678. Moreover, "the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness." *Id.*

The right of access includes the right to attend court proceedings and to "inspect and copy public records and documents, including judicial records and documents." *In re Cendant Corp.*, 260 F.3d at 192. Yet the common law right of access is "not absolute." *Bank of Am.*, 800 F.2d at 344. "The presumption [of access] is just that, and thus may be rebutted." *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 662 (3d Cir. 1991). The party seeking to overcome the presumption of access bears the burden of showing "that the interest in secrecy

---

[1] We do not reach the issue of whether intervention would also be permitted under Fed. R. Civ. P. 24(b).

outweighs the presumption." *Bank of Am.*, 800 F.2d at 344. The party seeking to prevent disclosure must show "that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted).

Further, "careful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants." *Leucadia, Inc. v. Applied Extrusion Techs.*, Inc., 998 F.2d 157, 167 (3d Cir. 1993). The District Court must articulate "the compelling, countervailing interests to be protected," make "specific findings on the record concerning the effects of disclosure," and "provide[] an opportunity for interested third parties to be heard." *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672-73 (3d Cir. 2019) (internal citations omitted). "In delineating the injury to be prevented, specificity is essential" and "[b]road allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.* [2]

## III. DISCUSSION

Non-party Teva has asserted its rights under both the common law and First Amendment rights of access. We first assess whether the Dismissal Letter falls within the scope of the common law right, such that the strong presumption of public access applies. Finding that it does, we then turn to whether the Government can rebut this presumption.

---

[2] As discussed *infra*, we find that unsealing the Dismissal Letter is warranted under the common law right of access and therefore do not reach the issue of whether unsealing would also be necessary under the First Amendment. This approach is consistent with Third Circuit precedent, which has "repeatedly declined to tackle the contours of the First Amendment right of public access when the common law right has been sufficient to permit access." *In re Avandia Mktg.*, 924 F.3d at 679 (collecting cases). That said, where the Government articulated its interests in sealing within the context of its First Amendment arguments, we consider these interests—to the extent they are applicable—in our assessment under the common law right of access.

### A.    The Common Law Right of Access Applies to the Dismissal Letter.

Whether the common law right of access attaches depends on whether the document at issue is considered a "judicial record." *In re Cendant Corp.*, 260 F.3d at 192. Under Third Circuit case law, courts usually focus on whether the document has been filed on the public docket. *See Pennsylvania Nat'l Mut. Cas. Ins. Grp. v. New England Reinsurance Corp.*, 840 F. App'x 688, 691 (3d Cir. 2020); *see also Leucadia*, 998 F.2d at 165 (explaining that "there is a presumptive right to public access to all material filed in connection with non-discovery pretrial motions[].") However, in certain contexts—such as with respect to settlement agreements—courts will also consider the function of the document and whether it has significance in the adjudication process. *See N. Jersey Media Grp. Inc. v. United States*, 836 F.3d 421 (3d Cir. 2016) (applying the more functional "use" test for settlement agreements). The functional test turns on "the use the court has made of [the document]." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 783 (3d Cir. 1994). In other words, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process[.]" *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995).

Here, regardless of whether we focus on filing or function, the Dismissal Letter is clearly a judicial record. The Government filed its Dismissal Letter on the docket to inform the Court's assessment of whether to grant the United States' Unopposed Motion to Dismiss the indictment. In addition, since the Dismissal Letter was filed in response to a request from the Court, and to aid in the judicial determination of whether to grant the unopposed motion and dismiss the indictment, it also satisfies the functional test for judicial records. *Cf. Barrett v. Wal-Mart Stores E., L.P.*, No. 21-1684, 2022 WL 4448944 (W.D. Pa. Sept. 23, 2022) (finding that, "[b]ecause the parties will be filing the settlement agreement with the Court for the purpose of requesting judicial approval in

this case, it is a judicial record and subject to the presumption of public access."). The common law presumption of access therefore attaches to the Dismissal Letter.

### B. The Government Cannot Sufficiently Rebut the Strong Presumption of Public Access to the Judicial Record at Issue.

The common law right of access is not absolute and may be rebutted. The party seeking to overcome the presumption of access bears the burden of showing "that the interest in secrecy outweighs the presumption." *Bank of Am.*, 800 F.2d at 344. The movant must show "that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Miller,* 16 F.3d at 551 (internal quotation marks omitted). Here, even though the common law presumption of access applies, the Government argues that continued sealing is warranted to protect the interests of cooperating witnesses and promote judicial efficiency, and to protect sensitive and privileged information about the United States' deliberative process.

#### 1. *Unsealing the Dismissal Letter Would Not Interfere with Law Enforcement Interests Or Judicial Performance.*

The Government argues that unsealing the Dismissal Letter would negatively impact its ability to secure cooperation from witnesses in related matters and future investigations and would discourage the Government from voluntarily sharing information with courts in future cases. (*See* Gov. Opp'n, ECF No. 103, at 9 ("granting the public access to that type of information … [could] reveal embarrassing or harmful information about cooperating witnesses and defendants, and discourage the United States from voluntarily dismissing cases."))

The Government cites Second Circuit precedent in noting that an important factor weighing in favor of continued sealing is whether granting public access is likely to "adversely affect law enforcement interests or judicial performance." *See United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Officials with law enforcement responsibilities may be heavily reliant upon the

5

voluntary cooperation of persons who may want or need confidentiality. If that confidentiality cannot be assured, cooperation will not be forthcoming.") Although we recognize the legitimate concerns of maintaining the confidentiality of cooperating witnesses, the Dismissal Letter here only contains generic, vague language regarding the "strength of testimony" and "perceived credibility" of unnamed witnesses.[3] While we recognize that a more detailed assessment of cooperating witnesses could warrant sealing in another case, we do not find that disclosure of this Dismissal Letter would sufficiently interfere with the Government's ability to procure cooperating witnesses.

Next, the Government argues that—since it is not required to share information regarding its considerations in moving to dismiss an indictment—disclosure would discourage it from sharing this type of information in the future and thus impede judicial efficiency. (*See* Gov. Opp'n at 9); *see also Wayte v. United States*, 470 U.S. 598, 607-08 (1985) (explaining that in the criminal context the Executive Branch has "broad discretion as to whom to prosecute" which "rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review" (cleaned up)). More broadly, the Government suggests that unsealing could produce a chilling effect that could impede judicial performance. While such an outcome is potentially possible, this type of speculative and attenuated argument does not permit the Court to make the "specific findings on the record regarding the effects of disclosure" that would be sufficient to rebut the presumption of public access. *See In re Avandia*, 924 F.3d at 672-73 ("To overcome that strong presumption, the District Court must articulate the compelling, countervailing interests to be

---

[3] Even by its own account, the Government acknowledges that the Dismissal Letter "provides only limited and general information about aspects of the United States' deliberative process in connection with its decision to seek dismissal of the above-captioned case[.]" (ECF No. 132 at 2.)

6

protected, make specific findings on the record concerning the effects of disclosure, and provide an opportunity for interested third parties to be heard.")

We therefore find that the Government's articulated interests in securing law enforcement objectives and promoting judicial efficiency are insufficient to warrant continued sealing of the Dismissal Letter.

     2.  *Asserting the Deliberative Process Privilege Would be Futile.*

The Government argues that if the Dismissal letter were made public it would jeopardize the United States' right and ability to protect its deliberative process in criminal cases. In addition, the Government requests that—should the Court find that unsealing is otherwise warranted—it be permitted to formally assert privilege based on its deliberative process.

The deliberative process extends to intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions are formulated. *See United States v. Berrigan*, 482 F.2d 171, 181 (3d Cir. 1973) (citing *Environmental Protection Agency v. Mink*, 410 U.S. 73, 85 (1973)). The privilege is premised on "the public policy of encouraging open, frank discussions between subordinate and chief concerning administrative action, and on the constitutional principle of separation of powers." *Id.* In deciding whether material is deliberative, courts focus on whether the disclosure of materials "would expose an agency's decision-making process to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Samahon v. U.S. Dep't of Just.*, No. 13-6462, 2015 WL 857358, at *24 (E.D. Pa. Feb. 27, 2015) (citing *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990)).

Here, the Government stated in its Motion to Seal that "[t]he letter discloses privileged information about the United States' deliberative process related to the above-captioned prosecution." (ECF No. 96, 1.) However, upon examination, the Dismissal Letter does not

disclose the kind of the pre-decisional material contemplated to fall within the scope of the privilege. *See U. S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 262 (2021) (explaining the privilege distinguishes between pre-decisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not); *see also Walsh v. Nursing Home Care Mgmt. Inc.*, 2022 WL 3647820, at * (E.D. Pa. Aug. 24, 2022) ("A document is pre-decisional if it "concern[s] an anticipated agency decision and ha[s] been generated prior to the actual decision being reached[.]")  Here, the Dismissal Letter was created after the Government had already moved for leave to dismiss the indictment, the letter was shared with the Court and filed on the docket, and the letter addressed a decision that had already been made.  Therefore, the Dismissal Letter was not "pre-decisional" and does not fall within the scope of the deliberative process privilege.  Accordingly, even if the Government had formally asserted the deliberative process privilege, such an assertion would have been futile.

## IV.     CONCLUSION

Because the Dismissal Letter is a judicial record to which the common law right of access attaches, and the Government has not shown that disclosure would lead to a clearly defined and serious injury, we find that the Dismissal Letter should be unsealed.  An appropriate order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**